ROBERT McLAGAN, plaintiff in error, *vs.* JOHN H. BROWN and JAMES W. BROWN, defendants in error.

### *Error to Jo Daviess.*

If a judgment debtor disposes of his equity of redemption, before a second judgment becomes a lien upon the premises, and the purchasers of the equity fail to redeem the premises, the judgment creditors under the second judgment may redeem after the twelve and before the expiration of the fifteen months from the day of the first sale.

A judgment creditor who redeems from a prior sale, acquires a valid title to the premises redeemed, even though the judgment, by virtue of which he acquired the right to redeem, may be subsequently reversed.

No one but the defendant in the judgment reversed, or his assignee, can claim any benefit on account of such reversal.

A mechanic's lien does not attach until the work shall have been performed, or the materials shall have been furnished, for which the lien is claimed.

A petition for mechanic's lien should make judgment creditors parties to the suit, if it is designed to affect or defeat their rights.

This was an action of ejectment brought by the defendants in error against the plaintiff, to recover the possession of lot seventy-five, on Water street, on the prairie, in the city of Galena. The action was in the usual form, and the plea not guilty. The cause was submitted to the Court, Sheldon, Judge, presiding, at May term, 1850, when a verdict was found for the defendants.

Both parties claimed title to the premises in question, through one John J. Cruikshank. The plaintiffs on the trial produced the record of a judgment in the Jo Daviess County Court, in favor of Artemas L. Holmes against Cruikshank, for the sum of $ 245 20, and costs of suit, rendered on the 9th day of October, 1845. An *alias fi. fa.* issued on this judgment, dated 17th June, 1846, which was levied on the lot in controversy, on the first day of August following, and the same was sold by the sheriff on the 29th of that month, Holmes, the plaintiff in the execution, becoming the purchaser, and receiving a certificate of purchase from the sheriff. The plaintiffs also produced and read in evidence a judgment in their favor, against said Cruikshank, rendered in the Circuit Court of Jo Daviess county, dated the 10th March, 1847. Execution issued thereon on the 27th day of November, 1847, and levied on said lot, claiming to be judgment creditors of Cruikshank, and on the same day paid to the sheriff the amount of Holmes' bid, with interest. The lot was put up and sold by the sheriff, under the redemption made by the Browns, the plaintiffs in the execution, and purchased in by them on the 21st December, 1847, at the amount of redemption paid by them to the sheriff, and no more. And the sheriff executed to them a deed, which was acknowledged and recorded.

It also appeared that the judgment obtained by the Browns, and under which they redeemed, was reversed by the Supreme Court, at the December term, 1848. The last day of the term at which the Browns obtained their judgment against Cruikshank, was the 22d day of March, 1847. The defendant admitted he was in possession of the premises when the suit was brought.

The defendant produced and read in evidence a deed, duly acknowledged, &c., from Cruikshank to J. and William Holmes and Mary Burgess, for the lot in dispute, dated 10th March, 1847, conveying to them a fee simple estate, with covenants of warranty, excepting the judgments in favor of Holmes, and Morris and Osborne. Sale for the consideration of $ 2,700. The defendant also produced and read as evidence, the certificate of purchase from the sheriff to Holmes, under his judgment, with an assignment of the same to C. Cooney, on the 29th of August, 1847, and an assignment from Cooney to Johnson, on the 24th of November, 1847, and a sheriff's deed to Johnson, on said certificate and assignments, after the judgment in favor of the Browns

had been reversed. The defendant also produced the records, &c., showing that Osborne and Morris had each recovered judgment against Cruikshank, for work done and materials furnished upon a building upon the lot in controversy; that the lot was sold on each of said judgments, and that Johnson, by virtue of assignments, had the sheriff's deed to the lot, under each of these sales. The judgments upon the mechanic's liens were rendered one in March and one in April, 1847.

McLagan brings the case to this Court, and assigns for error, that the Court improperly considered as evidence in the cause the reversed judgment of Brown *et al.,* they being the plaintiffs in the judgment, and purchasers had notice of all irregularities ; that Brown *et al.* were not judgment creditors as to this property, and had no right to redeem, and the overruling the motion for a new trial.

M. Y. JOHNSON, for plaintiff in error.

THOMPSON CAMPBELL and R. S. BLACKWELL, for defendants in error.

Opinion by Mr. Justice CATON :

The premises in question were sold to A. L. Holmes, under his judgment, on the 29th of August, 1846, who assigned his certificate of purchase to Cooney, on the 27th day of August, 1847, and he assigned to Johnson, on the 24th of November, 1847. On the 10th of March, 1847, the judgment debtor conveyed the premises to W. Holmes and Mary Burgess. On the same day the Browns obtained their judgment, which, however, did not become a lien upon the debtor's real estate till the 22d of the same month. They redeemed from the sale to A. L. Holmes, on the 27th of November, 1847, two days within the fifteen months from the date of that sale, and resold the premises on the 21st of December, 1847, and purchased them in at the amount of the redemption money, and took a sheriff's deed. Their judgment, under which they redeemed, was reversed at the December term of this Court, 1848.

It will be seen, that the judgment debtor sold his equity of redemption to W. Holmes and Burgess, before the Brown judgment became a lien upon the premises. They, however, never

66

redeemed, and the question is, could the last judgment creditors redeem from the first sale, after the expiration of the twelve months, within which the purchasers from the judgment debtor might have redeemed? We think, according to the decision in Sweezy *vs.* Chandler, *ante*, 445, they did possess that right. In principle, there is no difference between that case and this, so far as this question is concerned. There the Chandlers were held to be the assignees of the judgment debtor, and as such, bound to redeem within the twelve months, although they obtained their title under a sheriff's sale. Certainly Holmes and Burgess are none the less such assignees, because they obtained their title by a voluntary conveyance from the debtor. The rights acquired and duties imposed under either purchase were the same. Both had a right to redeem, which was paramount to the right of any judgment creditor, who had not acquired a lien before the date of their purchases; which right, however, they were bound to exercise within the twelve months; and if they neglected to do that, their rights of redemption were entirely and forever gone. They ceased to have any more rights or interest in the premises than as if they had never possessed the right of redemption. That right had expired by the lapse of time, and could not with propriety be thrust in between the conflicting claims arising under the sale upon the first judgment, and the right to redeem claimed under the last. Upon the termination of their rights, the case stood as if they had never existed, and had there been no assignment of the equity of redemption, the right of the subsequent judgment creditors to redeem would never have been questioned. Allowing the right of redemption to the last judgment creditors, is doing no violence to those who have no rights to violate, and the purchaser under the first judgment cannot complain, for he purchased with the express condition imposed by the statute, that " any judgment creditor " might redeem after the expiration of twelve, and within fifteen months, from the date of his purchase. Why should the first purchaser claim a benefit from the temporary existence of a right in third persons, which they have thrown away, and in which he had no interest, and with which he had no connection? But it was insisted, that to allow a judgment creditor to redeem, whose judgment was obtained after the sale by the judgment debtor, is, in effect, saying

that the latter shall not sell the equity of redemption because the title conveyed is liable to be overreached by a subsequent judgment creditor, who is thus allowed to redeem from the prior sale. This is misapprehending the effect of the decision altogether. It is only when the purchaser of the equity of redemption has lost his right, by neglecting to redeem, that the right of redemption attaches to the subsequent judgment. In this state, at least, the principal estate continues in the judgment debtor, after the sale on execution, so long as the equity of redemption continues, and indeed until the sheriff's deed is executed, and if he or his assignee redeems from the sale, or purchases the certificate of sale, the rights acquired under the first purchaser being thus united with the principal estate, are merged in it, and the right of redemption to subsequent judgment creditors is thus cut off, even before it ever attaches. If the redemption is made by the judgment debtor, who continues to hold the estate, of course it is subject to a subsequent judgment, but if redeemed by a *bona fide* assignee of the judgment debtor, the title as clearly would not be held subject to the subsequent judgment. He would hold a perfect title, discharged from all prior liens, and there would be nothing to which a subsequent judgment could attach—no existing rights to which it could reach back. In case a junior judgment were obtained before the assignment of the equity of redemption, then as the lien would attach to the equity of redemption while in the hands of the judgment debtor, the creditor's rights would be secured, by virtue of the lien, as effectually and upon the same principle that they would have been had the judgment debtor owned the entire estate and sold it after the judgment.

But the judgment under which the redemption was made was afterwards reversed, and as the judgment creditors were the purchasers at the second sale, it is insisted that they acquired no title, or if they did, it was defeated or extinguished by the reversal of their judgment. As a general rule, it was not denied that a purchaser at a sheriff's sale, upon an execution which is issued upon a judgment which is not absolutely void, but only irregular or erroneous, gets a good title, although the judgment may be afterwards reversed for such irregularity or error. But it is insisted that it is not so where the plaintiff in the irregular judgment becomes the purchaser, because he is

responsible for and is supposed to be cognizant of all the irregularities and errors in his judgment.　To a certain extent this may be, and indeed, we think is true, notwithstanding the cases referred to in Kentucky, holding a different doctrine; but clearly, the rule ought not to be extended beyond what the interest of the debtor or his grantees may require.　No one else should be allowed to question the title acquired by the purchaser, who was the plaintiff in the reversed judgment; and even with this limitation, the principle may have a tendency, to a certain extent, to diminish competition at sheriff's sales, which is against the policy of the law, as being prejudicial to both debtors and creditors.　But then, it is but right and reasonable, that upon the reversal of a judgment, the judgment debtor should be restored to what he has lost by reason of the erroneous judgment, as far as possible, without injury to innocent parties, and for that purpose the general policy of the law may be allowed to yield to a certain extent.　But in no event should gross and manifest injustice be perpetrated, even to one who has obtained and enforced an erroneous judgment.　When an innocent party is the purchaser, only the money produced by the sale can be restored to the judgment debtor, without injustice to the purchaser; but, as a general rule, when the plaintiff in the erroneous judgment has purchased, he should restore the specific property, for it is his duty to make all the reparation in his power, to one whose property he has wrongfully sold.　But certainly no one but the defendant, or his assignee, should be allowed to complain, or claim any benefit on account of such reversal.　Although he may reverse the judgment, the defendant may not choose to complain of or may even prefer to affirm the sale.　It may be for his interest to do so.　Suppose the chief value of the estate sold consisted in improvements which had, through the carelessness of the purchaser, or by accident, burned down, so that when the judgment was reversed it was not worth one fourth of the amount of the sale, can it be tolerated for a moment that a stranger may assert a supposed right of the debtor and defeat the purchaser's title, and thus prevent the defendant from recovering the price for which the premises sold, instead of the premises themselves?　The proposition would be as absurd in reason as revolting to justice.　A stranger cannot thus use my right for his benefit to my injury.　We cannot go the length of saying that the title ac-

quired by the plaintiff under the judgment is absolutely divested
and defeated, as to all the world, by the reversal of the judg-
ment. It is time enough to say that the purchaser acquired no
title, when the party injured complains. Here the defendant
below did not connect himself with the judgment debtor, and it
is not for him to say that a wrong has been done.

But this is not like the ordinary case of a sale to a plaintiff
under his judgment, which has been reversed. Although it may
be, that in form, the last sale was upon an execution issued up-
on the junior judgment, yet in substance the transaction was
somewhat different. The main question is, had the plaintiff in
that judgment a right to redeem from the previous sale? At
the time of the redemption that judgment was in full force, and
the right to redeem under it we have already attempted to show.
Nor can we appreciate the propriety of saying that the reversal
of that judgment defeated the rights acquired by virtue of that
redemption and the subsequent sale and conveyance. A right
without an interest is not easily appreciated, and neither the de-
fendant in that judgment nor his grantee had any possible inter-
est in defeating the title acquired, for, as before shown, all his
right was entirely gone before the judgment creditor could re-
deem; so that the only conflicting rights must arise between the
purchasers under the two judgments or their assigns. Who has
the better right, as between them, can admit of no doubt. In
order to redeem, the redeeming creditor must pay the full
amount for which the premises were first sold; and if we say
that he shall lose his title, by reason of the reversal of the judg-
ment, his loss is not confined to the title alone, but he must also
lose the redemption money, for there is no provision made for
restoration to him. And for whose benefit are all these rights
and interests of the redeeming creditors to be sacrificed? Not
for the benefit of the judgment debtor, for if the title is not al-
lowed to remain with the redeeming creditor, it must go to the
purchaser under the first judgment, who has already been re-
funded the purchase money which he paid, and out of the pocket,
too, of the man from whom he wrests the title; and not by reason
of any merit of his own, but because a judgment has been re-
versed, to which he was not a party, and in which he had no
interest. Shall the one who pays for the land not get it, and he
who gets the pay retain the premises? It would require ingeni-

ous reasoning to reconcile an upright mind to such justice.    If
the judgment debtor, or his assignee, has any interest in the con-
troversy, in such a case it must be to sustain the right of redemp-
tion, for then he has a chance of realizing something from the
second sale, while in no contingency can it result in any injury
to him; and yet if a stranger or the purchaser under the first
judgment, shall be allowed to defeat the right of redemption, by
reason of the reversal of the judgment, it can only be upon the
ground that the judgment debtor's rights have been sacrificed,
under the judgment, while it remained in force.

But we are not obliged to rely upon this manifest sense of
justice to sustain the title acquired under the last sale.    The
statute directing the conveyance to be made to the redeeming
creditor directs the sheriff " to execute a deed to such creditor
as the original purchaser, and such deed shall be as valid and
effectual in law as if such creditor had been the original purcha-
ser."    From this it is manifest that the title acquired by the re-
deeming creditor does not depend alone upon the validity of his
own judgment, but rather upon the judgment under which the
original purchase was made.    His own judgment, it is true,
must be sufficient to entitle him to redeem, but when that is the
case, then he succeeds to all the rights of the first purchaser,
and his title would seem to be as invulnerable as it would have
been in the hands of the purchaser from whom the redemption
was made.    This statute clearly excludes the idea that the last
purchaser's title may be defeated by the reversal of the judg-
ment under which the redemption was made.

The outstanding title attempted to be shown in Johnson, which
he derived under the judgments obtained in the two lien suits,
may be disposed of in few words.    We have no doubt that the
lien provided for by chapter 65, R. S., does not commence
or attach antecedently to the doing of the work or furnishing
the materials; and, in this case, the first judgment became a lien
upon the premises before any of the work was done or materials
furnished, for which those judgments were obtained; so that the
title derived under that judgment must necessarily take priority
to that derived under them, at least so far as the lot is concern-
ed; and under the latter judgments they did not attempt to sell
the building separate from the lot, even admitting that they
could have done so.    But none of these judgment creditors were

made parties to those lien suits, and consequently they are not bound by nor can their rights be prejudiced by those judgments. They might have been made parties, (Kimball *vs.* Cook, 1 Gilman, 423,) when they would have had an opportunity to defend their interests ; but as it is, those adjudications were *ex parte*, as to them, and the Circuit Court very properly held that they could not affect the title acquired under the Holmes judgment.

We perceive no error in the judgment, and it will have to be affirmed, with costs.

*Judgment affirmed.*