Detroit Steel Products Co., et al., Plaintiffs-Appellees, v. Irving I. Hudes, et al., Defendants-Appellees, Edward Gaskins, Doing Business as Gaskins Lumber Co., Defendant-Appellant, Bank of Marion, Defendant-Appellee.

Term No. 58–F–10.

Fourth District.

June 2, 1958.

Released for publication July 2, 1958.

Don Scott, of Harrisburg, Giffin, Winning, Lindner & Newkirk, of Springfield, for Edward Gaskins, defendant-appellant in initial appeal and appellee in separate appeal.

August L. Fowler, of Marion, for Bank of Marion, defendant-appellee and defendant-separate appellant.

PRESIDING JUSTICE BARDENS delivered the opinion of the court.

This is a case involving two appeals from a decree of foreclosure of mechanic's liens and mortgage in the Circuit Court of Saline county. As a result of the decree entered below, various priorities to the proceeds of sale were established among the labor claimants, the materialmen and a mortgagee. Appellant Gaskins, a materialman, appeals from that portion of the decree which subordinates a part of his claim to part of the mortgage even though the contract for materials antedated the recording of the mortgage. On the other hand, Appellee and Cross Appellant Bank

of Marion, the mortgagee, appeals from the subordinating of its claim to the labor claimants whose services were performed after the recordation of the mortgage. One further assignment of error pertains to subrogation of a part of Bank of Marion's mortgage to claims of materialmen paid by it.

On September 11, 1954, one Hudes entered into an agreement with the Harrisburg Jr. Chamber of Commerce calling for the erection of a building on land conveyed to Hudes, which agreement was recorded on October 8, 1954. Several days prior to September 7, 1954, Hudes went to the place of business of Gaskins to make arrangements for building materials. Accordingly, Gaskins commenced delivery of materials to the building site on September 7, 1954, the last such delivery being made on December 2, 1954. The total cost for such materials was $9,689.68. Meanwhile, Hudes had opened an account with the Bank of Marion and wrote checks totalling approximately $5,000 in excess of funds on deposit. The bank thereupon chose to lend Hudes $10,000, taking a first mortgage on the real estate involved as security. This mortgage was recorded on October 14, 1954. When the loan was made, the bank inquired as to unpaid liens and made a physical inspection of the premises where building operations were in progress. Having been told of two claims of materialmen, the bank required that Hudes pay these claims, aggregating $2,906.69, out of the loan proceeds. After the hearing, the Court found the land value to be $6,000 and the value of the two buildings erected thereon to be $40,000.

The decree of the Circuit Court, to the extent material to this appeal, established the following priorities after provisions for certain costs:

(a) All claims for labor, regardless of whether such work was performed before or after the recording of the mortgage;

(b) Claims for materials furnished before the recording of the bank's mortgage, including, on behalf of the bank as subrogee, the claims of materialmen paid from the loan proceeds;

(c) Claim of the bank on its mortgage to the extent of $6,000, the value of the land as determined by the Court;

(d) Claims for materials furnished after recordation of the mortgage, including a portion of the claim of Gaskins, whose contract with Hudes antedated the filing of the mortgage.

Appellant Gaskins' theory is that the entire amount of his claim attached as of the date of his agreement with Hudes to furnish materials (Chap. 82, Par. 1, Ill. Rev. Stat.) and that therefore his claim was entitled to an absolute priority over the mortgagee's claim as to the land as well as the improvements; further, that it was erroneous to give a part of the bank's claim the status of a materialman's claim on subrogation principles merely because such portion of the loan proceeds was used to pay or apply on bills for materials supplied. On the other hand, the bank defends the portion of the decree objected to by Gaskins and urges that there is no absolute priority of a materialman over a mortgagee except as to materials delivered before recordation of the mortgage; that as to material deliveries which postdate the mortgage, the degree of enhancement of the premises by the materials is the measure of priority. It also contends that its subrogation to claims of materialmen paid from loan proceeds was proper. On its separate appeal, the bank urges that the decree is erroneous in giving an absolute priority to labor claims since much of the labor represented by such claims was performed after the mortgage was recorded. Here again, it is argued, the right to priority rests upon proof of enhancement in value of the premises beyond that at the time of making its loan.

517

■ Section 16 of the Mechanics Lien Act (Chapter 82, Paragraph 16, Ill. Rev. Stats.) reads as follows:

"No incumbrance upon land, created before or after the making of the contract under the provisions of this act, shall operate upon the building erected, or materials furnished until a lien in favor of the persons having done work or furnished material shall have been satisfied, and upon questions arising between incumbrancers and lien creditors, all previous incumbrances shall be preferred to the extent of the value of the land at the time of making of the contract, and the lien creditor shall be preferred to the value of the improvements erected on said premises, and the court shall ascertain by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest. All incumbrances, whether by mortgage, judgment or otherwise, charged and shown to be fraudulent, in respect to creditors, may be set aside by the court, and the premises freed and discharged from such fraudulent incumbrance."

The bank contends that this provision establishes the requirement that a materialman who delivers materials after the recording of a mortgage is given priority over the mortgagee only to the extent he is able to prove enhancement of value, regardless of when the contract to furnish materials was entered into. This position ignores the plain language of Section 16 which imposes such condition to recovery only in the case of "previous encumbrances." Section 1 provides that a contractor's lien attaches as of the date of the contract, and Section 16 at two points refers to the time of "making of the contract," as affecting the rights of an encumbrancer. There being no dispute but that the materialman's contract antedated the mortgage recording, the portion of Section 16 relating to proof of enhancement was clearly inapplicable.

Under such circumstances, the entire claim of the materialman, properly perfected in accordance with the statute, has an absolute priority both as to land and improvements. Paddock v. Scott, et al., 121 Ill. 571; Dunham v. Woodworth, 158 Ill. App. 486; see also Love, Illinois Mechanics Liens, Second Ed.

Bank of Marion argues that priorities between encumbrances and lien claimants must be governed by Section 16 which is hereinbefore quoted and takes comfort from the language in the first part of the section, to-wit: "No incumbrance upon land, created before *or after* the making of the contract . . ." (italics ours). It may be argued that there is an inference derived from this language that allows an encumbrance recorded after the making of the contract to take precedence, as to the land, over the materials delivered and work performed after such recording. The history of the Mechanics Lien Act, however, destroys this inference. The quoted wording above was first incorporated in the Mechanics Lien Act of 1845. Under that act it has been held that the mechanics liens attached at the time of the delivery of the material or the performance of the labor. M'Lagan v. Brown, 11 Ill. 519; Williams v. Chapman, 17 Ill. 423. Under that state of the law it was possible for an encumbrancer to obtain priority after the contract was made but before materials were delivered or work done. With the change in Section 1 of the act, providing that the mechanics lien now attaches as of the date of the contract, the inference referred to and the words italicized are of no force. We conclude, therefore, that the portion of the decree granting the bank a priority of $6,000 over materials delivered by Gaskins after the recording of the mortgage is erroneous.

■ The bank's allegation of error in the absolute priority given labor claims is foreclosed by our conclusion above. Sections 15, 19 and 26 provide that

519

claims for wages are entitled to priority over other mechanics lien claimants. Having already accorded to Gaskins' lien its statutory priority over the mortgage, it necessarily follows that the labor claims are likewise prior to the mortgage since by statute they are prior to Gaskins' lien. The decree below was, therefore, correct in assigning priority to the wage claims.

■■ With respect to the issue of the bank's right to be subrogated to the claims of materialmen paid with loan proceeds, Gaskins argues that the bank was a mere volunteer and not entitled to subrogation, citing Bayard v. McGraw, 1 Ill. App. 134, aff'd 96 Ill. 146. Bouton v. Cameron, 205 Ill. 50, and other authorities. On the other hand the bank urges that it was acting with the intention and expectation that its mortgage would be a first lien against the premises, and pursuant to such intention, required that the known mechanics lien claimants be paid out of the loan proceeds. It is true that the bank failed to demand the sworn statement of lien claimants required by statute and neglected to obtain an assignment of the claims paid as permitted by Sec. 8. However, sound equitable principles support the chancellor's ruling on this issue. In 50 Am. Jur., Subrogation, Par. 4, it is said:

"Equity seeks by subrogation . . . to prevent the unearned enrichment of one party at the expense of another, by creating a relation somewhat analogous to a constructive trust in favor of the subrogee, or party making payment, in all legal rights held by the creditor."

See also Paragraph 11. In 83 C. J. S., Subrogation, Par. 6d, the principle is stated in the following language:

"Subrogation will be granted only where an equitable result will be reached, and it will not be allowed when to do so would be inequitable or where it would

520

accomplish an injustice; the remedy can be applied only with a due regard to the legal and equitable rights of others."

Here no prejudice to Gaskins or other materialmen resulted since, but for the mortgage, they would have been required to share the sale proceeds with the materialmen whose claims were paid. To deny subrogation would be to grant "an unearned enrichment" to Gaskins by the reduction of outstanding claims. Equity does not look to the technical niceties of procedure but is concerned with ultimate consequences. To permit the bank to stand in the shoes of the claimants to the extent they received loan proceeds takes nothing from Gaskins or the other claimants to which they were otherwise entitled.

In Home Savings Bank v. Bierstadt, 168 Ill. 618, 624, the court stated an exception to the "volunteer rule" raised by Gaskins: "It is the agreement that the security shall be kept alive for the benefit of the person making the payment which gives the right of subrogation, because it takes away the character of a mere volunteer." Here the bank's expectation that it was discharging all prior liens was clear. It was wrong, and to that extent loses the desired priority. But it nonetheless is not rendered a "mere volunteer" as to the whole of its mortgage. In Kaminskas v. Cepauskis, 369 Ill. 566, and Tyrrell v. Ward, 102 Ill. 29, the equitable principle that governs this general class of cases is discussed. In the Tyrrell case the court subrogated a money lender to the rights of previous lien holders and said at page 37:

"This every consideration of justice and good conscience demands. It would be highly inequitable and unjust to defeat the intention of the parties, and visit so heavy a loss on Bayard, when he advanced the money expressly to remove these prior liens and protect his own. Justice and authority not only sanction,

521

but demand, that Bayard should be subrogated to all their rights."

The decree below will be affirmed in all respects except in its failure to include the entire Gaskins claim in the second classification of claims. In that respect the decree is reversed and remanded with directions to include all of Gaskins' claim in Par. (e) of the ordering portion of the decree.

Decree affirmed in part, reversed in part, and remanded with directions.

CULBERTSON and SCHEINEMAN, JJ., concur.