**In re Thomas and Marguerita PEARCE, Debtors.**

**Michelle Vieira, Chapter 7 Trustee, Plaintiff,**

v.

**Thomas and Marguerita Pearce; C.P. Burnett & Sons, Bankers, Defendants.**

**Bankruptcy No. 98–41276.**
**Adversary No. 98–4112.**

United States Bankruptcy Court, S.D. Illinois.

July 16, 1999.

Michelle L. Vieira, Carbondale, IL, for plaintiff.

William A. Mueller, Marion, IL, Robert C. Wilson, Harrisburg, IL, for defendants.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The trustee in this case seeks to avoid, as a preferential transfer, a mortgage that was taken by the defendant bank to finance the debtors' purchase of real estate within 90 days of bankruptcy but that was not recorded for more than 20 days thereafter. The trustee contends that because of the bank's delay in perfecting, its mortgage does not come within the "enabling loan" exception to avoidance as a preference, which prohibits avoidance of a purchase money security interest that is perfected within 20 days after the debtor takes possession of the property. *See* 11 U.S.C. § 547(c)(3)(B). Thus, the trustee contends, the bank's mortgage is subject to avoidance under 11 U.S.C. § 547(b).

The bank concedes that its mortgage was not recorded within sufficient time to withstand avoidance under § 547, but asserts, nevertheless, that because the proceeds of its loan were paid to a prior mortgagee of the real estate, it is entitled to be subrogated to the position of that earlier mortgagee, who properly perfected its mortgage by recording outside the preference period of § 547. The bank maintains that it takes on the status of this prior mortgagee by virtue of state law regarding subrogation and that the trustee's claim against it, therefore, must fail.

The facts are undisputed. On June 6, 1998, the debtors, Thomas and Marguerita Pearce, purchased real property that had been mortgaged by the sellers, Richard and Virginia Amberger, to Fleet Mortgage Corporation ("Fleet"). To finance their purchase, the debtors executed a promissory note and mortgage in favor of C.P. Burnett & Sons, Bankers ("Burnett"). Burnett, in turn, issued a check to a loan servicing corporation, which paid off the Ambergers' mortgage to Fleet. Contemporaneously, the Ambergers executed a deed to the debtors. Although the deed to the debtors and the mortgage to Burnett were executed on June 6, 1998, neither the deed nor the mortgage were recorded until July 9, 1998. Six days later, on July 15, 1998, the debtors filed their Chapter 7 bankruptcy petition.

■ Under § 547(b) of the Bankruptcy Code, the trustee may avoid a transfer of the debtor's interest in property made within 90 days of bankruptcy that fulfills the requirements of that section, and, thus, effectively "prefers" one creditor over others. *See* 11 U.S.C. § 547(b).[1] The granting of a security interest—here, the mortgage given to Burnett by the debtors—constitutes such a "transfer" of the debtor's interest in property. *See* 11 U.S.C. § 101(54). If, however, a security interest is given to finance a debtor's purchase of

---

1. A transfer is avoidable under § 547(b) if it is made (1) to a creditor, (2) for or on account of an antecedent debt, (3) while the debtor was insolvent, and (4) within 90 days of bankruptcy, and if it (5) enables such creditor to receive more than the creditor would have received otherwise in a Chapter 7 liquidation. *See* 11 U.S.C. § 547(b).

property, § 547(c)(3)(B) provides an exception to the trustee's avoiding power so long as the security interest "is perfected on or before 20 days after the debtor receives possession of such property." 11 U.S.C. § 547(c)(3)(B).

In this case, Burnett, having failed to comply with the requirements of § 547(c)(3)(B) so as to preclude avoidance under federal bankruptcy law, seeks to invoke the state law doctrine of subrogation as a defense to the trustee's avoidance action. Subrogation is a equitable theory allowing one who pays a debt or claim for which another is primarily liable to "step into the shoes of," and exercise all the rights of, the creditor in question. In this way, one paying an obligation on another's behalf is substituted for, or subrogated to, the creditor and succeeds to the creditor's rights and remedies. *See* 34 Ill. L. & Prac. *Subrogation,* § 2, at 213 (1958). Originating in equity but applied equally in cases at law, subrogation operates on the principle that substantial justice should be attained regardless of form.[2] *Id.* at 213–14.

At first blush, it seems incongruous that a state law theory of equity might be raised to defeat a trustee's avoidance action in bankruptcy, given the equitable nature of bankruptcy law itself and the trustee's almost sacrosanct status as a fiduciary charged with executing a fair and equitable distribution to creditors. *See* Lisa B. Tancredi & Marc E. Shach, *The Equitable Subrogee vs. The Bankruptcy Trustee: New Uses for an Old Doctrine,*

16–FEB Amer.Bankr.Inst.J. 22, 22–23 (1997) [hereinafter *Equitable Subrogee* ]. It is well established, however, that while federal law defines a bankruptcy trustee's avoidance powers, state law governs the determination of property rights, including the perfection of liens. *See Midlantic Nat'l Bank v. Bridge,* 18 F.3d 195, 200 (3d Cir.1994); *Matter of Chaseley's Foods, Inc.,* 726 F.2d 303, 307 (7th Cir.1983). Thus, to the extent a state court would grant relief to an unperfected creditor under the equitable doctrine of subrogation, and to the extent such a result would not be inconsistent with the language and policy of federal bankruptcy statutes,[3] this Court must give effect to state subrogation principles in determining the efficacy of such creditor's lien against the avoiding powers of the trustee.

Illinois courts have long recognized the doctrine of subrogation and have applied it broadly "to include every instance in which [one] not acting as a mere volunteer or intruder pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."[4] *First Nat'l Bank of Belleville v. Heatherly,* 8 Ill.App.3d 1073, 291 N.E.2d 280, 281 (1972); *see American Nat'l Bank & Trust Co. of Chicago v. Weyerhaeuser Co.,* 692 F.2d 455, 460 (7th Cir.1982). There are two types of subrogation under Illinois case law: conventional subrogation, which is founded upon an express or implied agreement, and legal subrogation, which arises by operation of law. To assert a right of subrogation, a potential subrogee

---

**2.** State law subrogation, although deriving from similar considerations, is distinguishable from statutory subrogation under § 509(a) of the Bankruptcy Code, which grants the right of subrogation to a codebtor or guarantor of the debtor who has paid the creditor's claim. *See* 11 U.S.C. § 509(a); *In re Medicine Shoppe,* 210 B.R. 310, 313–314 (Bankr. N.D.Ill.1997).

**3.** See, for example, *In re Hendleman,* 91 B.R. 475, 476 (Bankr.N.D.Ill.1988), where the bankruptcy court declined to apply state law subrogation principles to effectuate a credi-

tor's lien under circumstances in which the debtor mistakenly failed to deed his property to a land trust assigned to that creditor, finding that the result would be contrary to the "best interests of creditors" test for modification of the debtor's Chapter 13 plan.

**4.** Because the property at issue in the trustee's preference action is located in Illinois, the Court must look to Illinois law on subrogation in determining the merits of Burnett's defense in this case.

must satisfy the following requirements: first, the debt or claim must have been paid in full; second, the subrogee must have paid a debt for which a third party and not the subrogee is primarily liable; third, the subrogor must possess a right which he could enforce against a third party; and finally, the subrogee must not have acted as a mere volunteer in paying the debt or claim. *See American Nat'l Bank v. Weyerhaeuser,* 692 F.2d at 461–463. Conventional subrogation differs from legal subrogation in that the parties' agreement takes away the character of a mere "volunteer," fulfilling that requirement for subrogation. *See. Western United Dairy Co. v. Continental Mortgage Co.,* 28 Ill.App.2d 132, 170 N.E.2d 650, 651 (1960); *see also Home Savings Bank v. Bierstadt,* 168 Ill. 618, 48 N.E. 161, 162 (1897).

 The parties have not cited, nor has the Court found, any authority addressing the application of Illinois subrogation principles in the context of an avoidance action in bankruptcy. Burnett, however, urges the Court to follow *Rinn v. First Union Nat'l Bank of Maryland,* 176 B.R. 401 (D.Md.1995), in which the court, looking to Maryland state law, applied subrogation principles in the bankruptcy context to allow a creditor with an unperfected security interest in the debtors' inventory and receivables to step into the shoes of a prior, properly perfected, lender and to exercise all the rights and powers of that lender vis-a-vis the bankruptcy trustee, even though the current lender clearly failed to comply with perfection requirements regarding its own lien. In *Rinn,* the current lender refinanced the debtors' obligation with the prior lender and, in doing so, issued a commitment letter expressly providing that the debtors would grant it a first-priority security interest in the inventory and receivables securing the loan with the previous lender. The debtors agreed to this condition but, due to an oversight, failed to timely execute the documents granting the current

lender the security interest in question. *See id.* at 405.

The *Rinn* court, applying the doctrine of conventional subrogation, found that the current lender had an implied agreement with the debtors that it be afforded the same perfected security interest as the prior lender. Given such an implied agreement, the court ruled that the first lender's perfected security interest was effectively assigned to the second lender upon payment of the debt. *Id.* at 409–10. As a result, the second lender possessed a perfected security interest that could withstand the trustee's avoidance action under § 544(a)(1) and § 547(b).

Burnett relies on *Rinn* in arguing that its lien is but a continuation of Fleet's earlier lien, which was perfected outside the preference period of § 547(b). The present case, however, is clearly distinguishable on its facts. Unlike in *Rinn* where the debtors agreed to continuation of the first lender's perfected status as provided in the commitment letter, there is no indication here of any agreement that Burnett would assume Fleet's perfected status in the subject real estate. *Rinn* involved the refinancing of a single indebtedness with two separate lenders, while the arrangement here encompassed two separate loan transactions between two sets of borrowers with their respective lenders: between the Ambergers and Fleet, on the one hand, and between the debtors and Burnett, on the other. Thus, although Burnett undoubtedly intended to acquire a perfected lien on the debtors' real estate, the debtors did not agree—and, indeed, could not have agreed—to allow Burnett to assume Fleet's perfected mortgage, since the debtors were strangers to the transaction between Fleet and the Ambergers.

In the absence of any "agreement" for Burnett to acquire Fleet's perfected status in the real estate, the debtors presumably met the conditions of their financing arrangement with Burnett when they executed the mortgage granting Burnett a

security interest in the property. The perfecting of that security interest—the recording of the mortgage—was entirely Burnett's prerogative and also its responsibility. Thus, the debtors were unable, as is this Court under the doctrine of conventional subrogation, to confer on Burnett the perfected mortgagee status of Fleet in the subject real estate.

The Court likewise finds distinguishable the case of *Detroit Steel Products Co. v. Hudes,* 17 Ill.App.2d 514, 151 N.E.2d 136 (1958), cited by Burnett, in which the court ruled that a mortgagee bank was entitled, under Illinois subrogation principles, to be subrogated to the claims of certain materialmen the bank had paid out of the proceeds of a construction loan, even though the bank failed to obtain assignments of those individuals' claims as required by statute. The court found that the bank's actions in satisfying known lien claimants showed it acted with the "expectation" that its mortgage would be a first lien against the premises. In addition, the court determined that no prejudice resulted to the remaining materialmen with claims in the loan proceeds, since they would have had to share the proceeds, in any event, with those materialmen whom the bank had paid and to whom the bank was entitled to be subrogated. *Id.* at 139.

■ Burnett argues that it, like the bank in *Hudes,* paid off other claims against the subject real estate—here, Fleet's mortgage—with the "expectation" that it would acquire a first lien in the property. It does not follow, however, that Burnett became entitled by reason of such "expectation" to be subrogated to Fleet's status as perfected mortgagee. As the *Hudes* court noted, subrogation is appropriate only when its application will not result in prejudice to the legal and equitable rights of others. *Id.* In this case, allowing Burnett to take on Fleet's status as perfected mortgagee based solely on its "expectation" of acquiring such status would prejudice the debtors' other creditors, who would share proportionately with

Burnett in the distribution of the debtors' estate if Burnett's lien were avoided as a preference.

■ In addition, although Burnett argues that its "expectation" of assuming Fleet's status as perfected mortgagee was sufficient to fulfill the requirement of conventional subrogation that payment be made pursuant to an agreement or understanding, Burnett's purported "expectation" is belied by the fact that it took a mortgage of its own with the debtors, which it eventually recorded in order to obtain such perfected status. Generally, when a creditor advances funds to a debtor to pay an existing debt and takes a new mortgage to secure the loan, there is no subrogation, because the new security manifests the creditor's intent to rely upon it, rather than upon the old security, which was discharged. *Bridge,* 18 F.3d at 201. In this case, Burnett's taking of new security to collateralize its loan underlines the fact that Burnett is not an innocent party needing the protection of equity to undo the fraud or mistake of another, but a sophisticated creditor in the business of making loans for a profit. Despite Burnett's delay in recording the debtors' mortgage, it is apparent that Burnett intended to rely on its own mortgage with the debtors rather than that of the previous mortgagee of the property. On these facts, the Court finds that the doctrine of conventional subrogation is inapplicable to entitle Burnett to the status of a perfected mortgagee in the debtors' real estate.

■ Even if Burnett could show that its payment of Fleet's mortgage was, if not pursuant to an agreement, necessary to protect its interest in the real estate and not the act of a mere volunteer, it still would be unable to claim the benefit of Fleet's perfected mortgage under principles of legal subrogation. Burnett admittedly paid a debt for which third parties (the Ambergers) were primarily liable. However, any rights it acquired thereby were enforceable, not against the debtors,

but against the Ambergers as obligors on Fleet's note and mortgage. A subrogee has no greater rights than the subrogor and can enforce only the rights of the subrogor. *Gable v. Reznick,* 183 Ill. App.3d 171, 131 Ill.Dec. 769, 538 N.E.2d 1325, 1326 (1989). In this case, Fleet had no rights against the debtors under its mortgage, and Burnett could not, by stepping into Fleet's shoes, enforce this mortgage against the debtors or the trustee as representative of the debtors' estate.

 The Court, having reviewed Illinois case law on subrogation as argued by the parties, finds no basis, under the facts of this case, for applying the principles of subrogation to preserve Burnett's lien against the trustee. Equitable subrogation is, quintessentially, a factual inquiry, and its application is dependent on the circumstances and equities of each case. *See Dix Mutual Insurance Co. v. LaFramboise,* 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622, 624 (1992); *see also Equitable Subrogee, supra* at 22. In the absence of a strong showing of equity on the part of a potential subrogee, this Court must not allow state subrogation principles to override the equitable purposes of bankruptcy law. *See, e.g., Rouse v. Chase Manhattan Bank (In re Brown),* 226 B.R. 39, 44–45 (W.D.Mo.1998). For these reasons, the Court holds that Burnett may not invoke the protection of Fleet's mortgage in this case and that Burnett, by delaying perfection of its own mortgage beyond the 20-day enabling loan provision of § 547(c)(3)(B), received a preference that is avoidable by the trustee under § 547(b).

 Burnett makes an additional argument that if the Court finds its mortgage is avoidable as a preference, Burnett is still entitled to the benefit of the debtors' $15,000 homestead exemption because the debtors' mortgage contained a waiver

of homestead in its favor. The Court finds no merit in this argument. It is well-established that a bankruptcy trustee can avoid the debtor's transfer of exempt property. *See Covey v. United Federal Savings & Loan Ass'n of Illinois (In re Owen),* 104 B.R. 929, 932 (C.D.Ill.1989). In this case, the debtors' waiver of homestead in the mortgage to Burnett constituted such a transfer of exempt property, which the trustee can avoid as a preference.[5]

The trustee having established that the debtors' mortgage to Burnett effected a transfer of the debtors' property within 90 days of bankruptcy, the Court finds that judgment should enter for the trustee on her complaint to avoid preferential transfer against the defendants.

---

**5.** Exempt property is "property of the estate" until the debtor asserts a right to exemption. Thus, a transfer of otherwise exempt property, which has been avoided under § 547 is brought into the bankruptcy estate under 11

U.S.C. § 551. *See Owen,* 104 B.R. at 932. The debtor is prohibited from exempting property recovered by the trustee under § 551 if such transfer was voluntary. *See* 11 U.S.C. § 522(g)(1).