PRESIDING JUSTICE COBBS delivered the judgment of the court, with opinion.
*346 ¶ 1 Plaintiff, Edward F. Paliatka, appeals from the order dismissing his first amended complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure ( 735 ILCS 5/2-615 (West 2016) ). The trial court found that dismissal with prejudice was warranted because Paliatka was unable to state a cause of action for an equitable mortgage. This finding was based on Paliatka's representation that there was no written agreement subrogating him to the original mortgage on the property at issue. Paliatka contends that the trial court misapplied the law regarding the elements of an equitable mortgage and an equitable subrogation. We affirm.
¶ 2 I. BACKGROUND
¶ 3 The following facts are obtained from the pleadings in the record. The property at issue is located at 4021 West 99th Street in Oak Lawn, Illinois (the property), and is currently owned by John and Joanna Bush. The Bushes entered into a real estate contract to purchase the property from Miarstar Properties, LLC (Miarstar), in April 2016, with a closing date of June 9, 2016. They funded the purchase using a Credit Union I loan with the property pledged as security. The Credit Union I mortgage agreement and the warranty deed granted by Miarstar were both executed on June 9, 2016, and recorded in Cook County on July 20, 2016.
¶ 4 Paliatka first filed a complaint against Miarstar; Skyline 1, Inc.; S12, LLC; and any unknown owners and nonrecord claimants on June 16, 2016, asserting a lien against the property and seeking foreclosure. Skyline 1, Inc., and S12, LLC, are companies solely owned and operated by Paliatka's grandson, Lyle Anastos. Anastos did not file an appearance in the proceedings below. At the time Paliatka filed his complaint, Miarstar was the recorded owner of the property. Paliatka also filed a lis pendens against the property in conjunction with his complaint. Paliatka was later granted leave of the court to add John Bush, Joanna Bush, and Credit Union I as defendants. On April 20, 2017, Paliatka voluntarily dismissed Miarstar as a defendant, with prejudice. The trial court dismissed the complaint against the Bushes and Credit Union I under section 2-615.
¶ 5 With leave of the trial court, Paliatka filed an amended complaint on May 18, 2017. The amended complaint named Skyline 1, Inc.; S12, LLC; the Bushes; and Credit Union I as defendants and sought a judgment declaring the existence of Paliatka's "equitable lien and mortgage" on the property and to initiate foreclosure proceedings. According to Paliatka's amended complaint, Anastos owned the property, operating under the business S12, LLC, until he sold it on July 1, 2014. Prior to the sale of the property, Anastos executed a mortgage, security agreement, and financing statement for $290,000[1] in favor of *347 Renovo Financial Loan Fund, LLC (Renovo), pledging the property and a second property as security for the loan. This mortgage was recorded in Cook County on August 24, 2013.[2] The following year, Renovo assigned its interest in both properties to RFLF 2, LLC. This assignment was recorded on March 31, 2014. On July 1, 2014 a quitclaim deed conveying the property to Miarstar was recorded in Cook County. The deed stated that Miarstar paid Anastos's company $75,000 for the property.
¶ 6 The amended complaint further alleged that Paliatka paid $342,354.67 to RFLF 2, LLC, on October 29, 2015, to satisfy the outstanding balance on the mortgage loan. Paliatka claimed that through this payment he acquired all the rights, liens, and interest of RFLF 2, LLC, and Renovo in relation to the property and mortgage agreement. Paliatka alleged that S12, LLC, defaulted on the mortgage because it had missed more than eight months of payments and it violated the terms of the mortgage by conveying the property to Miarstar. Thus, Paliatka brought this suit to foreclose on the property and satisfy the defaulted mortgage.
¶ 7 On September 11, 2017, the trial court granted the Bushes and Credit Union I's jointly filed motion to dismiss under section 2-615, with prejudice. The trial court's order explicitly stated it found Paliatka could not state a cause of action for an equitable mortgage based on the representation by his counsel, in open court, that no written agreement existed showing that Paliatka was subrogated to Renovo's or RFLF 2, LLC's mortgage interest.
¶ 8 Although not attached to the amended complaint, Paliatka entered an additional exhibit during the proceedings showing that Renovo executed a release deed referencing the mortgaged property and the assignment to RFLF 2, LLC. The release deed was dated November 10, 2015, and recorded in Cook County on December 18, 2015.
¶ 9 II. ANALYSIS
¶ 10 Paliatka assigns error to the trial court's dismissal of his first amended complaint for failure to state a cause of action. Paliatka contends that he sufficiently pleaded a claim for an equitable mortgage because he pleaded facts showing an equitable subrogation. Further, even if he had failed to plead sufficient facts, Paliatka argues that dismissal with prejudice was erroneous because he could cure the deficient complaint with further amendments.
¶ 11 The question on appeal is whether Paliatka pleaded sufficient facts to state a claim upon which relief can be granted. A motion to dismiss pursuant to section 2-615 challenges the legal sufficiency of a complaint. Wilson v. County of Cook , 2012 IL 112026, ¶ 14, 360 Ill.Dec. 148, 968 N.E.2d 641. Illinois is a fact-pleading jurisdiction and plaintiffs are required to allege "a legally recognized cause of action and *** must plead facts which bring the particular case within that cause of action." (Internal quotation marks omitted.) Chandler v. Illinois Central R.R. Co. , 207 Ill. 2d 331, 348, 278 Ill.Dec. 340, 798 N.E.2d 724 (2003). When reviewing a section 2-615 motion, a court must determine "whether the allegations in the complaint, considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted."
*348 Sheffler v. Commonwealth Edison Co. , 2011 IL 110166, ¶ 61, 353 Ill.Dec. 299, 955 N.E.2d 1110. A court should only dismiss a complaint under section 2-615 where no set of facts would entitle the plaintiff to recovery. Marshall v. Burger King Corp. , 222 Ill. 2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). We review a section 2-615 dismissal de novo . Wilson , 2012 IL 112026, ¶ 14, 360 Ill.Dec. 148, 968 N.E.2d 641.
¶ 12 The trial court dismissed the complaint explicitly for failing to state a claim of equitable mortgage. However, we recognize that pleadings must be construed liberally with the aim of doing substantial justice. Hargrove v. Gerill Corp. , 124 Ill. App. 3d 924, 931, 80 Ill.Dec. 243, 464 N.E.2d 1226 (1984). The reviewing court should interpret the assertions of the complaint in the light most favorable to the plaintiff by accepting as true all well-pleaded facts and the reasonable inferences that can be drawn from them. Marshall , 222 Ill. 2d at 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 ; see also Aurelius v. State Farm Fire & Casualty Co. , 384 Ill. App. 3d 969, 973, 323 Ill.Dec. 739, 894 N.E.2d 765 (2008) (noting that this rule applies to motions to dismiss brought under both sections 2-615 and 2-619 ).
¶ 13 Paliatka's complaint sought declaratory judgment of his "equitable lien and mortgage." The phrases equitable lien and equitable mortgage refer to two separate concepts in law. The terms appear to be interchangeable, but an equitable mortgage is a narrower concept than an equitable lien. See Hargrove , 124 Ill. App. 3d at 931, 80 Ill.Dec. 243, 464 N.E.2d 1226. The parties' briefs use both terms and raise issues addressing points of law tied to both concepts. Therefore, we will review Paliatka's complaint as asserting separate claims for an equitable mortgage and an equitable lien.
¶ 14 A. Subrogation
¶ 15 Prior to reaching Paliatka's claims for an equitable mortgage and an equitable lien, we must address Paliatka's claim that he was equitably subrogated to Renovo's mortgage against the property after he paid the outstanding loan balance on behalf of Anastos. In his prayer for relief, he asks this court to acknowledge that the law operated to subrogate him to Renovo's rights, that the subrogation entitles him to a lien and mortgage interest against the property, that his interest has priority over the Bushes and Credit Union I's interests, and to foreclose on the property in order to satisfy the lien. We disagree with Paliatka's claim that by operation of equitable subrogation he is entitled to an equitable mortgage. As we discuss below, Paliatka's argument, which conflates the two concepts, is flawed. Even if we were to find that Paliatka was equitably subrogated to Renovo or RFLF 2, LLC's interest, he would still be unable to plead a claim for an equitable mortgage.
¶ 16 Subrogation is a principle of equity jurisprudence where one who involuntarily pays the debt of another succeeds to the rights of the original creditor, with respect to the debt paid. Dix Mutual Insurance Co. v. LaFramboise , 149 Ill. 2d 314, 319, 173 Ill.Dec. 648, 597 N.E.2d 622 (1992) ; Home Savings Bank v. Bierstadt , 168 Ill. 618, 623, 48 N.E. 161 (1897). In Illinois, subrogation is often applied to substitute one party to the lien priority of another. See Bierstadt , 168 Ill. 618, 48 N.E. 161 ; Detroit Steel Products Co. v. Hudes , 17 Ill. App. 2d 514, 151 N.E.2d 136 (1958) ; Kankakee Federal Savings & Loan Ass'n v. Arnove , 318 Ill. App. 261, 47 N.E.2d 874 (1943). A lien is a hold or claim that one party has on the property of another for a debt.
*349 Aames Capital Corp. v. Interstate Bank of Oak Forest , 315 Ill. App. 3d 700, 703, 248 Ill.Dec. 565, 734 N.E.2d 493 (2000). Generally, the lien that is recorded first in time has priority and is entitled to satisfaction by the property it binds before other claims. Union Planters Bank, N.A. v. FT Mortgage Cos. , 341 Ill. App. 3d 921, 924-25, 276 Ill.Dec. 465, 794 N.E.2d 360 (2003). Subrogation allows for an exception from the first-in-time priority rule. Id. at 925, 276 Ill.Dec. 465, 794 N.E.2d 360.
¶ 17 We recognize two types of subrogation: contractual (conventional) and common law (equitable). Schultz v. Gotlund , 138 Ill. 2d 171, 173, 149 Ill.Dec. 282, 561 N.E.2d 652 (1990). Conventional subrogation arises where there is an express agreement between the parties to the effect that the party paying the debts on behalf of the third party will be able to assert the rights of the original creditor. See Bierstadt , 168 Ill. at 624, 48 N.E. 161. In the context of lien priorities, conventional subrogation is commonly seen in modern refinancing transactions. See Aames , 315 Ill. App. 3d at 706, 248 Ill.Dec. 565, 734 N.E.2d 493. A new lender seeking to be subrogated in lien priority when refinancing must demonstrate (1) there is an express agreement providing that the new lender will be able to assert the rights of the original creditor, (2) the previous debt was in fact paid off by the new lender, (3) no harm will come to an innocent party if priority is granted to the lender, and (4) there was no gross negligence. Union Planters Bank, N.A , 341 Ill. App. 3d at 925, 276 Ill.Dec. 465, 794 N.E.2d 360. Additionally, the new lender must record its mortgage, the original mortgage must be in full force and effect at the time of recording, and the lien priority is limited to the original amount perfected by the previous creditor. Aames , 315 Ill. App. 3d at 710, 248 Ill.Dec. 565, 734 N.E.2d 493. These requirements are consistent with our supreme court's decision in Bierstadt , 168 Ill. at 625, 48 N.E. 161 (emphasizing that subrogation should not cause injury to an innocent party).
¶ 18 In contrast to the formalities of conventional subrogation, equitable subrogation typically arises simply as a result of payment on behalf of another. Subrogation is then applied to hold the one, who in good conscience should be accountable, responsible for the debt. LaFramboise , 149 Ill. 2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622 ; Bierstadt , 168 Ill. at 624, 48 N.E. 161. There is no general rule to determine whether a right of equitable subrogation exists because the right depends upon balancing the equities of each particular case. LaFramboise , 149 Ill. 2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622. Nonetheless, it requires showing that one has involuntarily paid a debt of another[3] and is seeking to assert the rights of the original creditor against the one whose debt was absolved by the payment. See id. Subrogation of this kind will only be recognized where an equitable result will be reached. Detroit Steel Products Co. , 17 Ill. App. 2d at 520, 151 N.E.2d 136.
¶ 19 Paliatka clearly does not meet the requirements for contractual subrogation. There is no evidence of an express agreement. He did not record his lien, and even if his lis pendens notice was considered, a release deed for the original mortgage had been recorded the previous year. Paliatka asks this court to apply equitable subrogation of the mortgage interest to enforce his alleged lien against the property. In order to recognize an equitable subrogation, we would be required *350 to balance the particular equities of the case. However, the issue before us is not whether Paliatka has proven he should be equitably subrogated. Our review is limited to whether Paliatka pleaded sufficient facts to state a cause of action for an equitable mortgage or an equitable lien. Although the concept of subrogation is tied to Paliatka's remaining arguments, a finding of equitable subrogation would not suffice to demonstrate all the elements for an equitable mortgage or an equitable lien. Therefore, we will not engage in a balancing of the equities and instead turn our attention to the elements of equitable mortgages and equitable liens.
¶ 20 B. Equitable Mortgage
¶ 21 Mortgage is defined by the Illinois Mortgage Foreclosure Law as a type of lien, specific to real property, created by a consensual written instrument that grants or retains an interest in real estate to secure a debt or other obligation. 735 ILCS 5/15-1207 (West 2016). Equitable mortgages are a subtype of mortgages and are also created by a consensual written instrument. Id. § 15-1207(d). By Paliatka's admission, there was no written instrument. Accordingly, we find the trial court correctly ruled that Paliatka could not state a cause of action for an equitable mortgage.
¶ 22 Paliatka argues that, notwithstanding the absence of a written instrument, he holds an equitable mortgage against the property. In support, he relies on Trustees of Zion Methodist Church v. Smith , 335 Ill. App. 233, 81 N.E.2d 649 (1948), and Hatchett v. W2X, Inc. , 2013 IL App (1st) 121758, 373 Ill.Dec. 385, 993 N.E.2d 944. His reliance is clearly misplaced as neither case stands for the proposition that an equitable mortgage can be enforced without a written instrument.
¶ 23 In Trustees of Zion , the parties offered into evidence a written note that was originally titled "chattel mortgage" and was altered to read "real estate mortgage." 335 Ill. App. at 235, 81 N.E.2d 649. The court found that the parties clearly intended to pledge the real property referenced as security for the debt. Id. at 238, 81 N.E.2d 649. Thus, the form of the agreement was not material because the parties' intent overcame the nonconforming instrument. Id. at 236-37, 81 N.E.2d 649. The doctrine of equitable mortgage allowed the court to relax the law's technical requirements in creating an enforceable mortgage. Id. We do not read Trustees of Zion as standing for the proposition that an equitable mortgage may be found in the absence of a written instrument.
¶ 24 In Hatchett , the court examined whether an executed warranty deed was an outright sale or an equitable mortgage. 2013 IL App (1st) 121758, 373 Ill.Dec. 385, 993 N.E.2d 944. In its examination, the court set forth the following factors as indicia of an equitable mortgage: the existence of a debt relationship, the close relationship of the parties, prior unsuccessful attempts for a loan, the lack of legal assistance, the inadequacy of consideration, an agreement to repurchase, and the continued exercise of ownership privileges and responsibilities by the seller. Id. ¶ 39. The court stated that in order to overcome the written instrument conveying the property, proof of the intent to create an equitable mortgage must be clear, satisfactory, and convincing. Id. In the course of evaluating these factors, the court further noted that any type of evidence, including circumstantial, may be offered as proof of the debt relationship. Id. ¶ 45. In Hatchett , the court's reliance on circumstantial evidence only demonstrated that circumstantial evidence is sufficient to overcome a written instrument. It did not eliminate the need *351 for a written instrument to prove an equitable mortgage.
¶ 25 Paliatka's argument has no support in case law. Based on Paliatka's own representation that there was not a written instrument, no circumstance exists where he could plead a cause of action for an equitable mortgage. Therefore, we find the trial court properly dismissed Paliatka's complaint with prejudice.
¶ 26 C. Equitable Lien
¶ 27 Paliatka contends that the court should impose an equitable lien because the Bushes received the benefit of property unencumbered by the Renovo mortgage. It is this perceived benefit that forms the basis for his equitable lien claim and his related assertion that the Bushes have an obligation to pay for receiving this benefit. The Bushes respond that Paliatka has not alleged the elements of an equitable lien and therefore his complaint was properly dismissed.
¶ 28 The imposition of an equitable lien is a remedy for a debt that cannot be legally enforced but which should be recognized under considerations of right and fairness. Hargrove , 124 Ill. App. 3d at 930, 80 Ill.Dec. 243, 464 N.E.2d 1226 (citing Watson v. Hobson , 401 Ill. 191, 201, 81 N.E.2d 885 (1948) ). The essential elements of an equitable lien are (1) a debt, duty, or obligation defendant owed to plaintiff and (2) the existence of a res that, in some way, is particularly related to the debt or obligation. CitiMortgage, Inc. v. Parille , 2016 IL App (2d) 150286, ¶ 33, 401 Ill.Dec. 167, 49 N.E.3d 869. Contrary to the requirements for an equitable mortgage, an equitable lien may be found either (1) where the parties expressed in writing their intention to make real property, personal property, or some fund the security for a debt but did not use express lien language or (2) where considerations of fairness and justice would require imposing a lien even without an express agreement between the parties. Paine/Wetzel Associates, Inc. v. Gitles , 174 Ill. App. 3d 389, 393, 123 Ill.Dec. 813, 528 N.E.2d 358 (1988).
¶ 29 As previously discussed, Paliatka has no express agreement regarding his claim against the property. We therefore focus our analysis on considerations of fairness and justice. For that purpose, Parille , 2016 IL App (2d) 150286, 401 Ill.Dec. 167, 49 N.E.3d 869, is instructive. In Parille , the plaintiff, CitiMortgage, was assigned the interest on a couple's refinanced mortgage and note by the original creditor after the couple defaulted on repayment. Id. ¶ 9. Due to a technicality in the signatures on the refinancing documents, the plaintiff could not enforce its rights as a creditor and foreclose on the property to satisfy the defaulted mortgage. Id. ¶¶ 10-15. Thus, the plaintiff asked the court to impose an equitable lien on the property to compensate it for the defective mortgage. Id. ¶ 33.
¶ 30 First, the court recognized that, most typically, an equitable lien arises where a landowner has a duty, debt, or obligation to a tenant or builder for physical improvements made to the land. Id. ¶¶ 33, 36. Where the landowner has received a benefit from those improvements, an equitable lien should be awarded in the amount of the value of the improvements to the property. Id. (citing W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp. , 132 Ill. App. 3d 260, 87 Ill.Dec. 536, 477 N.E.2d 513 (1985) ). The court held that repayment of earlier mortgages made during the refinancing process was not comparable to the debt, duty, or obligation that is recognized for physical improvements made to a property. Id. ¶¶ 35-36. Here, Paliatka has not alleged any physical improvements to the property. Therefore, he would not be able to state a claim for an equitable lien on this basis.
*352 ¶ 31 Paliatka alleges that the Bushes have received a benefit, where they own the property with no liability for the Renovo mortgage. He therefore takes the position that the Bushes owe him a duty to pay for the benefit that he conferred on the property. The Parille court found persuasive Shchekina v. Washington Mutual Bank , No. 08 C 6094, 2012 WL 3245957 (N.D. Ill. Aug. 7, 2012), a case in which the federal district court recognized that another type of equitable lien may arise, specifically, in a case where a creditor's refinanced mortgage documents are later challenged by the homeowner. Parille , 2016 IL App (2d) 150286, ¶ 37, 401 Ill.Dec. 167, 49 N.E.3d 869. Although not bound, we, like the court in Parille , find Shchekina helpful for a complete analysis of Paliatka's claims.
¶ 32 In Shchekina , the homeowner alleged that her signature had been forged on the refinancing documents and sought to quiet title in her property without repayment of the mortgage loan. 2012 WL 3245957. The creditor sought a finding that the homeowner owed it a debt because the creditor had advanced funds to pay off the previous mortgage loans. Id. at *6. The court recognized the debt based upon the creditor's equitable subrogation[4] of the last valid mortgage. Id. The court found that the homeowner received a benefit when her liability on the previous mortgages was extinguished by the creditor's refinancing. Id. at *4. Finding that the homeowner owed a debt to the creditor in the amount of the last valid mortgage, the court imposed an equitable lien against the related property. Id. at *6.
¶ 33 Although the facts here appear similar to those in Shchekina , the cases are clearly distinguishable. Unlike in Shchekina , Paliatka is not a creditor who helped the Bushes refinance their mortgage and was left with an invalid security interest. There, the same homeowner executed the original valid mortgage and continued to enjoy the benefit of the property without being held liable on the refinanced mortgage. Id. at *4. Thus, it was fair to impose a debt on the homeowner. In contrast, the Bushes had nothing to do with the execution of the Renovo mortgage by Anastos. Although the Bushes presently enjoy whatever benefit ownership of the property entails, Anastos was the one who truly benefitted from Paliatka's actions. Anastos was relieved of his liability for the mortgage debt by Paliatka's payment. He also enjoyed the benefit of transferring the property to Miarstar and receiving $75,000 in compensation. The Bushes received no special benefit when they entered into a standard real estate contract and mortgage agreement with Miarstar and Credit Union I, respectively. Thus, we do not agree with Paliatka's assertion that the Bushes owe any debt, duty, or obligation to him. Accordingly, we find that Paliatka cannot state a cause of action for an equitable lien.
¶ 34 III. CONCLUSION
¶ 35 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.
¶ 36 Affirmed.
Justices Howse and Lavin concurred with the judgment and opinion.

We take as fact the amount listed in the attached exhibit ($290,000) rather than the amount listed in Paliatka's complaint ($310,000) for the principal mortgage amount. Gagnon v. Schickel , 2012 IL App (1st) 120645, ¶ 18, 368 Ill.Dec. 240, 983 N.E.2d 1044 (Where an exhibit contradicts the allegations in a complaint, the exhibit controls.).

Paliatika's complaint indicates the recording date was July 24, 2013, whereas the attached exhibit is stamped "8/24/2013". See id.

The Bushes and Credit Union I also raise an argument that Paliatka cannot show he involuntarily paid Anastos debt and therefore cannot prove subrogation. We do not need to reach this argument to resolve the issues on appeal.

As previously discussed, supra ¶ 17, conventional subrogation is commonly seen in modern refinancing transactions. However, due to the alleged forgery, the creditor in Shchekina could not satisfy the technical requirements of conventional subrogation and instead sought to be equitably subrogated to the earlier mortgage.