COMMUNITY BANK OF GREATER PEORIA *et al.*, Plaintiffs-Appellants, v. LAURA CARTER *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—95—4109

Opinion filed September 4, 1996.

William H. Theis, of Chicago, for appellants.

Patricia E. Bender, of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court: Community Bank of Greater Peoria (hereinafter Community Bank) brought this action in the circuit court of Cook County against defendants, Laura Carter, Executive Security Door Manufacturing Co., Inc., unknown tenants, unknown others, nonrecord claimants, Harris Insurance Services, Inc. (hereinafter Harris), Illinois Fair Plan Association (hereinafter Illinois Fair Plan), J.I. Kislak Mortgage Service Corp., and the Cadle Co., seeking a judgment of foreclosure and sale. Plaintiff T. Miller, Inc. (hereinafter Miller), the assignee of Community Bank, obtained leave of court to substitute for Community Bank in the foreclosure action and filed an amended complaint requesting injunction relief ordering defendant Carter to endorse an insurance proceeds check. The circuit court denied plaintiff's request for injunctive relief. Following a hearing on cross-motions for summary judgment, the circuit court provisionally granted defendant Carter's motion and denied plaintiff's motion for summary judgment. Plaintiff filed a motion to reconsider and presented the circuit court with additional evidence. The circuit court denied plaintiff's motion to reconsider and dismissed with prejudice the portion of the amended complaint requesting injunctive relief. It is from this order and the denial of its motion for summary judgment that plaintiff now appeals pursuant to Supreme Court Rule 307 (155 Ill. 2d R. 307).

For the reasons that follow, we reverse and remand.

## FACTUAL BACKGROUND

Community Bank, the original mortgagee, initiated mortgage foreclosure proceedings on the residential premises located at 6946 South Justine Street in Chicago, against Carter, the mortgagor, in May 1993. On September 20, 1993, Community Bank obtained a default judgment of foreclosure against Carter. The original indebtedness of the mortgagor was $24,291.50; as of September 1993, the principal due was $21,564.87. In November 1993, Community Bank assigned the note and mortgage to Imperial Fund I.L.P. (hereinafter Imperial Fund).

In January 1994, the premises withstood substantial fire damage. At the time of the fire, Carter had in place a fire insurance policy with Illinois Fair Plan; Community Bank was named in the policy as the mortgagee. Subsequent to the fire, Carter filed a claim under the insurance policy through Harris, a public adjuster.

In March 1994, Imperial Fund assigned the note and the mortgage to Miller, which had no knowledge of the fire damage, for $18,000. On March 28, 1994, Miller filed a claim with Illinois Fair

Plan for insurance proceeds under Carter's policy. Harris also filed a claim to the insurance proceeds on its own behalf.

On April 12, 1994, Illinois Fair Plan issued a full settlement check in the amount of $53,559.33 made payable to Miller, Harris and Carter. Following a dispute as to the proper division of the check, Miller obtained leave of court to substitute for Community Bank in the foreclosure action against Carter and filed an amended complaint. In its amended complaint, Miller added count II requesting injunctive relief ordering Carter to endorse the insurance check and directing the payment of the proceeds to the various parties. On February 27, 1995, the circuit court granted Miller's motion for summary judgment, an order that the circuit court later vacated. On September 1, 1995, following cross-motions for summary judgment, the circuit court denied Miller's motion and provisionally granted Carter summary judgment. The court continued the matter to allow Miller to provide additional evidence as to the purchase price paid for the assignment of the note and mortgage and Miller's knowledge of the fire damage at the time of the assignment. Miller filed a motion to reconsider along with an affidavit of its president which set forth that Miller had paid $18,000 for the note and mortgage and that plaintiff had no knowledge of the fire damage until after the mortgage had been assigned.

On November 20, 1995, the circuit court granted Carter's motion for summary judgment. Pursuant to Miller's request, the circuit court entered a corrected order reflecting that Miller's request for injunctive relief was denied and that count II of the amended complaint was dismissed with prejudice. On December 5, 1995, Miller filed a timely notice of appeal.

## ISSUE PRESENTED FOR REVIEW

The sole issue raised on appeal is whether an assignee of a note and mortgage succeeds to the original mortgagee's rights under a fire insurance policy obtained as security for the mortgage debt.

## OPINION

Summary judgment is an appropriate remedy if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact. *White v. United States Fidelity & Guaranty Co.*, 21 Ill. App. 3d 588, 592 (1974). Summary judgment motions permit the trial court to provide an expedient means of resolution where no genuine issue of material fact exists. *Purthill v. Hess*, 111 Ill. 2d 229, 240 (1986). When deciding the motion, the trial court should construe all of the evidence before it in the light most favorable to the nonmoving party. *Great-West Life As-*

*surance Co. v. General Accident Fire & Life Assurance Corp.*, 116 Ill. App. 3d 921, 926 (1983). The Illinois Supreme Court has warned that while the summary judgment procedure is an important tool in the prompt administration of justice, it is a drastic measure; therefore, trial courts should grant such judgment only where the movant's right is so clear as to be free from doubt. *Reed v. Bascon*, 124 Ill. 2d 386, 393 (1988). Our review of a grant of summary judgment is *de novo. Myers v. Health Specialists*, 225 Ill. App. 3d 68, 72 (1992).

■ Miller argues on appeal that as assignee mortgagee, he had an equitable lien on the proceeds from the fire insurance policy and that the assignment of the mortgage debt automatically rendered an assignment of the insurance proceeds. Carter contends that, although an original mortgagee has a right to insurance proceeds derived from the mortgaged property, an assignee mortgagee does not automatically acquire a right to such proceeds via the assignment of the mortgage. Under Illinois law, the well-established rule is that no particular words are required to create a valid assignment so long as the intent to transfer is evident. *In re Estate of Martinek*, 140 Ill. App. 3d 621, 629 (1986). "The assignment operates to transfer to the assignee all of the assignor's right, title, or interest in the thing assigned. [Citations.] The assignee, by acquiring the same rights as the assignor, stands in the shoes of the assignor." *Martinek*, 140 Ill. App. 3d at 629. Applying this principle to the case at hand, we believe that Community Bank intended to transfer to Imperial Fund and, subsequently, Imperial Fund intended to transfer to Miller all of their rights to the mortgage, including the rights to the fire insurance policy in effect to secure the mortgage debt. Thus, Miller would stand in the shoes of Imperial Fund, which stood in the shoes of the original mortgagee, Community Bank, and would have all of the rights, titles and interests of the original mortgagee.

In her brief, Carter states that once the indebtedness of the original mortgagee is satisfied, fully or partially, the mortgagee's insurable interest is terminated. Carter relies on *Western Employers Insurance v. Bank of Ravenswood*, 159 Ill. App. 3d 22 (1987), for the proposition that once Community Bank sold the note and mortgage to Imperial Fund, Community Bank no longer had an insurable interest in the property, nor did Imperial Fund, nor could Miller. Therefore, according to Carter, at the time of the loss, Miller had no insurable interest in the mortgaged property and, thus, no right to the proceeds of the policy. We believe this to be an inaccurate interpretation of *Western Employers*.

In *Western Employers*, an insurer issued a fire insurance policy on an apartment building. A savings and loan association, the origi-

nal mortgagee, was named in the policy. In July 1985, the mortgagee obtained a judgment of foreclosure against the mortgagors. Later that year, the building was substantially damaged by a fire. After the fire, the mortgagee sold the property and its right to the insurance proceeds to two purchasers at a sheriff's sale. Subsequently, the purchasers and the mortgagors both filed claims with the insurer. The insurer filed an action for interpleader, and the circuit court awarded judgment to the mortgagors. On appeal, the *Western Employers* court stated that, if subsequent to the fire, the mortgagee has had its debt satisfied by purchase at a foreclosure, the mortgagee's rights are terminated. Since the mortgagee's debt was satisfied at the foreclosure sale, its mortgage was extinguished and so were its rights to the insurance proceeds. Accordingly, its assignees, the purchasers, had no right to the insurance proceeds either. *Western Employers*, 159 Ill. App. 3d at 27.

■ The *Western Employers* court reiterated that the recovery of insurance proceeds depends upon the sequence of two events: the foreclosure sale and the loss. *Western Employers Insurance v. Bank of Ravenswood*, 159 Ill. App. 3d 22, 25 (1987); *Great-West Life*, 116 Ill. App. 3d at 929-30. Where the foreclosure sale precedes the fire loss, the amount bid at the foreclosure sale is for the property in an undamaged condition. *Great-West Life*, 116 Ill. App. 3d at 930. Therefore, the mortgagee required the insurance proceeds to restore the property to its prior condition. *Great-West Life*, 116 Ill. App. 3d at 930. However, where the loss to the property precedes the foreclosure sale, the mortgagee has an election as to how he may satisfy the mortgage indebtedness.

"[First,] [h]e may look to the insurance company for payment as mortgagee *** and may recover, up to the limits of the policy, the full amount of the mortgage debt at the time of the loss. In this event he would have no additional recourse against the mortgagor for the reason that his debt has been fully satisfied.

The second alternative available to the mortgagee is satisfaction of the mortgage debt by foreclosure. If the mortgagee elects to pursue this latter option, and the foreclosure sale does not bring the full amount of the mortgage debt at the time of the loss, he may recover the balance due under the policy as owner. If the foreclosure does fully satisfy the mortgage debt, he, of course, has no additional recourse against the insurance company, as his debt has been fully satisfied." *Nationwide Mutual Fire Insurance Co. v. Wilborn*, 291 Ala. 193, 198, 279 So. 2d 460, 463 (1973), cited in *Great-West Life*, 116 Ill. App. 3d at 930.

■ The instant case is distinguishable from *Western Employers*, specifically because neither Imperial Fund nor Miller bought at a

foreclosure sale. Community Bank and Imperial Fund merely transferred their interest in the mortgage debt to their assignees. The transfers that took place resulted in no extinguishment of the mortgage. Following the transfers, the mortgagor still had rights in the mortgaged premises; the assignee mortgagees merely purchased the right to collect the mortgage. This situation is fundamentally different from that of a foreclosure sale. Following a foreclosure sale, the mortgage *itself* is extinguished. The purchaser at a foreclosure sale has not purchased the right to collect the debt as is the case in the present litigation; rather, he has purchased the actual premises subject to the mortgagor's right of redemption. Once a debt has been fully satisfied at a foreclosure sale, an original mortgagee has no right to the insurance proceeds, for the mortgagee may not collect more than the amount of the debt. *Western Employers Insurance*, 159 Ill. App. 3d at 26.

Since Imperial Fund and Miller did not purchase at a foreclosure sale, the debt was never extinguished. Thus, both assignees acquired the same rights and interests as those of the original mortgagee. Even though Miller purchased the mortgage after the fire, it was not purchasing damaged property but the right to collect the mortgage debt on such damaged property. It paid a reasonable amount for such mortgage with the expectation that it was acquiring all of the original mortgagee's rights, including the right to the insurance proceeds, and thus putting himself in the shoes of the original mortgagee. Accordingly, we find that, when Miller purchased the mortgage and note, the right to the insurance proceeds, originally held by Community Bank, was transferred to Miller as well. If this court were to hold otherwise, future mortgagees would find it difficult, if not impossible, to transfer their rights at a private sale following a loss. If potential assignees know that they will have no rights to the insurance proceeds, they will not purchase a mortgage, regardless of the amount owing on the debt, for an amount in excess of the value of the damaged premises. Because of the loss that the original mortgagee would sustain, he will be forced to retain his mortgage or conduct foreclosure proceedings. This, in effect, would be an unnecessary restraint on the alienation of property, a result contrary to the public policy of Illinois.

In light of the foregoing, we find that the circuit court erred in granting summary judgment to Carter and in dismissing count II of the amended complaint. We therefore direct the circuit court to enter summary judgment in favor of Miller and to adjudicate any other conflicting claims as to the insurance proceeds.

Accordingly, the judgment of the circuit court of Cook County is

reversed and remanded for further proceedings not inconsistent with the views presented herein.

Reversed and remanded with directions.

CERDA and GREIMAN, JJ., concur.