31 July 2000

No. 2--99--1280 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

AAMES CAPITAL CORPORATION, ) Appeal from the Circuit Court

) of Du Page County.

)

Plaintiff-Appellant, )

)

v. ) No. 97--CH--0577  

) 

INTERSTATE BANK OF OAK FOREST, )

)

)

Defendant-Appellee )

)

(Patrick J. Wangler; Diane M. )

Wangler, a/k/a Dianne M. Wangler; )

United States of America; ) Honorable

Unknown Owners and Nonrecord ) Bonnie M. Wheaton,

Claimants, Defendants). ) Judge, Presiding.

                                                                  

JUSTICE GEIGER delivered the opinion of the court:

This appeal arises from a dispute concerning lien priority in a mortgage foreclosure proceeding.  The issue is whether a mortgagee that pays off a priority mortgage pursuant to a refinancing agreement is entitled to be subrogated to the priority mortgage lien recorded by the original mortgagee.

On October 17, 1986, Patrick Wangler and Diane Wangler executed a note and mortgage in favor of Hinsdale Federal Savings and Loan that was later assigned to Standard Federal Bank (Standard).  The note and mortgage were filed with the Du Page County recorder's office on November 7, 1986.  Thereafter, the Wanglers executed junior mortgages in favor of Suburban Bank of Elmhurst (Suburban) that were recorded on July 12, 1988, June 30, 1989, January 31, 1990, and July 30, 1991.  

On April 26, 1996, the defendant-appellee, Interstate Bank of Oak Forest (Interstate), obtained a judgment against the Wanglers in the amount of $75,891.06.  Interstate recorded a memorandum of judgment with the Du Page County recorder's office on September 4, 1996.

On August 28, 1996, the Wanglers executed a note and mortgage for the sum of $174,000 in favor of Pacific Thrift and Loan Company (Pacific) pursuant to a refinancing agreement whereby Pacific would pay off the mortgages to Standard and Suburban.  The mortgage document executed by the parties is the Fannie Mae/Freddie Mac Uniform Instrument for Illinois (Uniform Instrument). Pacific's mortgage was later assigned to plaintiff-appellant, Aames Capital Corporation (Aames).  The Wanglers did not receive any funds from the refinancing.  The closing agent issued checks to Standard and Suburban on September 4, 1996, in payment of the balance due under the mortgages held by them.  On September 20, 1996, Pacific recorded its mortgage.  On September 24, 1996, Suburban filed releases of its mortgages, but no release had been filed of the Standard mortgage.

On June 6, 1997, Aames filed this foreclosure action after the Wanglers defaulted on the note.  In its foreclosure complaint, Aames alleged that Interstate's judgment lien was inferior and subordinate to Aames's first mortgage lien.

Both Aames and Interstate filed motions for summary judgment as to lien priority.  The trial court entered an order denying Aames's motion and granting Interstate's motion, ruling that Interstate's judgment lien took priority because it was recorded prior to Aames's mortgage lien.

On appeal, Aames argues that, even though Interstate's judgment lien predates its mortgage with the Wanglers, it  nevertheless holds first priority position because it is equitably subrogated to the priority mortgage liens perfected by Standard and by Suburban.  Aames argues that the doctrine of equitable subrogation provides that a refinancing mortgage assumes the priority position of the prior mortgage that is satisfied through the refinancing.  Interstate responds that the doctrine of first in time, first in right applies such that the judgment lien takes priority as the lien prior in time.  Interstate also argues that the doctrine of equitable subrogation is only applied when there is an express agreement that the refinancing mortgage will assume the priority position.

I. FIRST IN TIME, FIRST IN RIGHT

We review the trial court's summary judgment order 
de novo
.  
Wiseman-Hughes Enterprises, Inc. v. Reger
, 248 Ill. App. 3d 854, 857 (1993).  A lien is a hold or claim that one party has on the property of another for a debt.  
Podvinec v. Popov
, 266 Ill. App. 3d 72, 77 (1994), 
rev'd on other grounds
, 168 Ill. 2d 130 (1995).  A lien that is first in time generally has priority and is entitled to prior satisfaction of the property it binds.  
Cole Taylor Bank v. Cole Taylor Bank
, 224 Ill. App. 3d 696, 704 (1992).

A mortgage is a type of consensual lien on real property.  See 735 ILCS 5/15-1207 (West 1996).  Specifically, it is an interest in land created by written instrument providing security in real estate to secure the payment of a debt.  
Resolution Trust Corp. v. Holtzman
, 248 Ill. App. 3d 105, 111 (1993).  
Under the Illinois Mortgage Foreclosure Law, a mortgage lien is created upon recording of the mortgage with the recorder of deeds.  See 735 ILCS 5/15-1301 (West 1996); see also 
Firstmark Standard Life Insurance Co. v. Superior Bank FSB
, 271 Ill. App. 3d 435, 439 (1995).

The perfection of mortgage liens is governed also by the Conveyances Act (765 ILCS 5/1 
et seq
. (West 1996)).   Section 28 of the Conveyances Act provides that deeds, mortgages, and other instruments relating to or affecting the title to real estate shall be recorded in the county in which such real estate is situated.  765 ILCS 5/28 (West 1996).  The purpose of this section is to give third parties the opportunity to ascertain the status of title to the property.  
Lubershane v. Village of Glencoe
, 63 Ill. App. 3d 874, 879 (1978).  The purchaser of real estate may rely on the public record of conveyances and instruments affecting title, unless he has notice or is chargeable with notice of a claim or interest that is inconsistent with the record.  
Bullard v. Turner
, 357 Ill. 279, 283 (1934).

Section 30 of the Conveyances Act provides as follows: 

"All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record."  765 ILCS 5/30 (West 1996).

The purpose of this section is to protect subsequent purchasers against unrecorded prior instruments.  
Farmers State Bank v. Neese
, 281 Ill. App. 3d 98, 106 (1996).  A presumption exists that the first mortgage recorded has priority.  
Firstmark
, 271 Ill. App. 3d at 439.  An unrecorded interest in land is not effective as to a 
bona fide
 purchaser without notice.  
Schaumburg State Bank v. Bank of Wheaton
, 197 Ill. App. 3d 713, 720 (1990).  However, where a party has constructive notice of a prior interest in real estate, the failure to record is not necessarily fatal to the rights of the prior interest holder.  See 
Dana Point Condominium Ass'n, Inc. v. Keystone Service Co.
, 141 Ill. App. 3d 916, 922 (1986).

The doctrine of first in time, first in right is not always as clear and obvious as it may seem.  For instance, a separate body of law governs lien priority in cases involving renewal notes and mortgages.  A renewal note and mortgage do not ordinarily operate as payment and in discharge of an original note for purposes of determining whether the renewal note maintained priority position.  
State Bank v. Winnetka Bank
, 245 Ill. App. 3d 984, 991 (1993). 
 In cases of a dispute concerning priority when the original note and mortgage are renewed, the court looks to the intent of the parties in determining whether the renewal extinguishes the original mortgage lien.  
Winnetka Bank
, 245 Ill. App. 3d at 991.  In 
Winnetka Bank
, the court was persuaded that the mortgage lien survived the renewal of the original mortgage and the tender of an additional loan because there was no evidence that the original mortgage was ever canceled or released.  See 
Winnetka Bank
, 245 Ill. App. 3d at 991.

Another area of interest concerns the priority position of mortgage assignees.  Relying in part on 
Community Bank v. Carter
, 283 Ill. App. 3d 505 (1996), we recently held in 
Federal National Mortgage Ass'n v. Kuipers
, No. 2--99--0933, slip op. at 10 (June 28, 2000), that an assignee of a mortgagee was not required to record the assignment of mortgage in order to maintain the original mortgagee's priority position.  In 
Carter
, the court held that the assignments of the mortgage did not extinguish the mortgage debt and, therefore, the assignees acquired the same rights and interests as the original mortgagee, including the right to collect under a property insurance policy.  
Carter
, 283 Ill. App. 3d at 510.

Yet an additional consideration to first in time, first in right is the law surrounding subrogation.  Subrogation is a method whereby one who had involuntarily paid a debt of another succeeds to the rights of the other with respect to the debt paid.  
Dix Mutual Insurance Co. v. LaFramboise
, 149 Ill. 2d 314, 319  (1992).  Subrogation has been applied to subrogate one party to the lien priority of another.  See 
Home Savings Bank v. Bierstadt
, 168 Ill. 618 (1897); 
Detroit Steel Products Co. v. Hudes
, 17 Ill. App. 2d 514 (1958); 
Kankakee Federal Savings & Loan Ass'n v. Arnove
, 318 Ill. App. 261 (1943).  These cases are discussed in greater detail below.  However, two principles emerge from the above discussion that lead us to reject Interstate's contention that the only relevant inquiry is the date of recording of its lien.  The first is that blind adherence to the first in time, first in right doctrine is sometimes insufficient to determine lien priority.  The second is that whatever case-law doctrines operate as exceptions to the first in time, first in right doctrine must comport with the purpose of the recording requirement, namely, to provide notice of liens to third parties.

In this case, the original mortgage liens were created by agreement and perfected between November 1986 and July 1991 by recording with the Du Page County recorder of deeds.  The mortgage liens acted to secure payment of the mortgage debts.  Henceforward from those dates, third parties examining chain of title to the real estate were put on notice of the existence of the debts and of the liens on the real estate.  Because no release of lien had been filed pursuant to section 2 of the Mortgage Act, there was no indication to third parties that the liens were ever extinguished. See 765 ILCS 905/2 (West 1996).

Those liens were still in effect when Interstate recorded its judgment lien on September 4, 1996.  Because Interstate had notice of prior mortgage liens when it recorded its judgment lien, we see no reason why the doctrine of first in time, first in right would require us to reject, at the outset, Aames's argument that subrogation may apply.  Therefore, we take a closer look at equitable and conventional subrogation.

II.  COMPARISON OF EQUITABLE AND CONVENTIONAL SUBROGATION

There are two broad categories of subrogation rights: contractual or conventional rights, and common-law or equitable rights.  
Schultz v. Gotlund
, 138 Ill. 2d 171, 173 (1990).  Equitable subrogation is a creature of chancery that is utilized to prevent unjust enrichment.  
LaFramboise
, 149 Ill. 2d at 319.  There is no general rule that can be laid down to determine whether a right of equitable subrogation exists, since the right depends upon the equities of each particular case.  
LaFramboise
, 149 Ill. 2d at 319.  Conventional subrogation, on the other hand, arises from an agreement between the parties that the subrogee pay a debt on behalf of a third party and, in return, be able to assert the rights of the original creditor.  See 
Home Savings Bank v. Bierstadt
, 168 Ill. 618, 624 (1897).

In 
Bierstadt
, the court held that the appellee, who had advanced funds to discharge certain prior deeds of trust, was subrogated to the priority lien rights of the holders of the deeds of trust.  The court defined conventional subrogation as a right springing from an express agreement with the debtor where the subrogee advances money to pay a claim, which carries a lien, and where the subrogee and the debtor agree that the subrogee is to have an equal lien to the one paid off.  
Bierstadt
, 168 Ill. at 624.  As such, the court reasoned, the subrogee is entitled to the benefit of the security that he has satisfied with the expectation of receiving an equal lien.  
Bierstadt
, 168 Ill. at 624.

The 
Bierstadt
 court described the agreement between the debtor and the appellee as being "to the effect" that the appellee would advance sufficient funds to pay off the prior deeds of trust and then would receive from the debtor a first mortgage as security for the funds advanced.  
Bierstadt
, 168 Ill. at 624-25.  In applying conventional subrogation, the court noted, "[t]hat was the substance of the transaction, and equity will effectuate the real intention of the parties, where no injury is done to an innocent party."  
Bierstadt
, 168 Ill. at 625.

Although conventional subrogation is seen sporadically in Illinois case law, equitable subrogation is even more elusive.  One of the few modern applications of equitable subrogation is seen in 
Detroit Steel Products Co. v. Hudes
, 17 Ill. App. 2d 514, 517 (1958).  In 
Hudes
, the court found that equitable subrogation would apply to advance the claims of the mortgagee bank in a mechanics' lien foreclosure where the bank had required that the borrower pay certain claims of a material provider from the loan proceeds.  The trial court found that the bank's mortgage would be subrogated to the priority position of the material provider to the extent that the material provider had been paid from the loan proceeds.

The court held that equitable subrogation prevents the unearned enrichment of one party at the expense of another and will be granted only where an equitable result will be reached.  
Hudes
, 17 Ill. App. 2d at 520.  The court noted that no prejudice resulted to the material providers who had not been paid because, but for the mortgage, they would have been required to share the sale proceeds with the material provider whose claim had been paid from the loan proceeds.  
Hudes
, 17 Ill. App. 2d at 521.  The court further noted that to deny subrogation would be to grant an unearned enrichment to the unpaid material providers due to the reduction of outstanding claims.  
Hudes
, 17 Ill. App. 2d at 521.

III.  APPLICATION OF CONVENTIONAL AND EQUITABLE SUBROGATION TO MORTGAGE REFINANCING

Although Aames cites cases applying conventional subrogation, it argues that equitable subrogation applies; Aames does not consider that Illinois case law has specifically held that the two are separate and distinct doctrines.  It appears that there is no precise definition of equitable subrogation that is applicable to this case.  It also appears that Illinois courts, including those cases cited by Aames, have previously considered whether conventional subrogation applies to a mortgage refinancing agreement.  See 
Bierstadt
, 168 Ill. at 625; 
Arnove
, 318 Ill. App. at 265.  For these reasons, we decline to analyze the present case under equitable subrogation and, instead, consider whether conventional subrogation, as outlined in Aames's argument and in 
Bierstadt
, may be applied.

Interstate argues that subrogation does not apply because there was no agreement that Pacific would move into the priority positions established by Standard and by Suburban.  This contention forms the real crux of this case.  Relying on 
Firstmark Standard Life Insurance Co. v. Superior Bank
, 271 Ill. App. 3d 435 (1995), Interstate argues that subrogation requires that there be an agreement that the refinancing mortgage move into the position of the mortgage that it is paying off.  A careful review of 
Firstmark
, however, reveals that its holding is inapplicable to the present case.

In 
Firstmark
, at the time that the property owners executed a refinancing mortgage in favor of the appellant, there were four senior mortgages on the property.  
Firstmark
, 271 Ill. App. 3d at 437.  The appellant paid off three of the four mortgages.  The remaining senior mortgage was held by the appellee.  The mortgage held by the appellant provided that it was subject to certain exceptions, including the mortgage held by the appellee.  The appellee later filed a foreclosure proceeding, and the parties filed motions for summary judgment as to lien priority.  The trial court ruled that the appellee's mortgage took priority.

On appeal, the appellant argued that the doctrine of conventional subrogation should be applied such that it would move into the priority position of the three initial mortgages it had paid off pursuant to the refinancing.  
Firstmark
, 271 Ill. App. 3d at 439.  It does not appear from the court's analysis either that the appellant requested review under equitable subrogation or that the court considered the distinction between equitable and conventional subrogation as defined in 
Schultz
.

The 
Firstmark
 court reviewed early case law on the issue of the application of conventional subrogation and found that there must be an express agreement that the interests of the refinancing mortgagee are to be advanced to a first mortgage.  
Firstmark
, 271 Ill. App. 3d at 440-41.  The court held that there was no such express agreement in that case.  Pointing to the language in the refinancing mortgage that the mortgage held by the appellant was subject to the mortgage held by the appellee, the court held that the doctrine of conventional subrogation would not apply.  
Firstmark
, 271 Ill. App. 3d at 441.

We do not find that the holding in 
Firstmark
 controls the present case.  In 
Firstmark
, the refinancing mortgage expressly stated that it was subject to the prior liens.  In the present case, however, no such provision appears in either the note or the Uniform Instrument.  It specifically provides that the Wanglers were to discharge any lien that had priority over the mortgage.  The Uniform Instrument further provides that Pacific may pay any sums secured by a lien that had priority over its mortgage and that any such sum paid would become additional debt secured by the mortgage.

Although there is no provision in the Uniform Instrument that specifically states that the mortgage is a first mortgage, we believe that the above-referenced provisions, when read together, indicate that the agreement of the parties was that the mortgage held by Pacific would be a first priority mortgage, and that any other prior mortgages of record would be paid off by Pacific, with the new mortgage securing that debt.  In addition, we do not believe that such a specific provision in the mortgage document regarding the assumption of the first priority position is required by the holding in 
Bierstadt
.  As noted earlier, the 
Bierstadt
 court described the agreement as being "to the effect" of paying off a priority lien and assuming that priority position.  The 
Bierstadt
 court makes no reference to any specific provision in the mortgage documents.

In short, we do not believe that 
Firstmark
 may be read to conclude that the Uniform Instrument is somehow inadequate to consummate the refinancing of a mortgage in Illinois.  Moreover, we note that, even if there were an additional provision that specifically stated that Pacific would have a first priority lien, it would be of little effect, as lien priority is determined by law, any agreement of the parties notwithstanding.

Although 
Firstmark
 tells us when conventional subrogation will not apply, it does not tell us when it will.  There are no Illinois cases of recent vintage that explain when subrogation will apply to a mortgage refinancing.  We are persuaded by Aames's argument that the holding in 
Bierstadt
 should be resurrected to determine when conventional subrogation should apply to a case involving a mortgage refinancing.  Conventional subrogation is a right springing from an agreement with the debtor where the subrogee advances money to pay a claim that carries a lien and where the subrogee and the debtor agree that the subrogee is to have an equal lien to the one paid off.  See 
Bierstadt
, 168 Ill. at 624.  The holding in 
Bierstadt
 fits the precise definition of a mortgage refinancing.  In this case, Aames, as the assignee of the subrogee, is entitled to the benefit of the security attaching to the debt that it satisfied with the expectation of receiving an equal lien.  See  
Bierstadt
, 168 Ill. at 624; see also 
Arnove
, 318 Ill. App. at 264 (holding that it is "settled law" that, when a refinancing mortgage is made, the lien of the old mortgage continues in effect without interruption and the new mortgage does not become subordinate to an intervening lien attaching between the time of the recording of the old mortgage and the effective date of the new one).

There are numerous policy reasons to apply the doctrine of conventional subrogation to a case involving a refinancing mortgage.  A debtor in bankruptcy, who has outstanding judgments and has defaulted on his mortgage, may find relief in refinancing his home, albeit under less favorable loan terms.  Similarly, any time a mortgage note is accelerated or matures is a prime opportunity for a debtor to enter into a refinancing agreement.  Absent subrogation of the original mortgage lien, these consumers would be hard-pressed to find a lender willing to refinance.  In addition, if subrogation were not applied in cases of mortgage refinancings, then the intervening lienor (in this case Interstate) would receive a windfall from the payoff by the refinancing mortgagee.

Subrogation has been applied in cases of mortgage refinancings in many jurisdictions (see 
Mort v. United States
, 86 F.3d 890 (9th
 Cir. 1996);  
Harley J. Robinson Trust v. Ardmore Acres, Inc.
, 6 F. Supp. 2d 640 (E.D. MI 1998);  
In re Cutty's-Gurnee, Inc.
, 133 B.R. 934 (N.D. Ill. 1991); 
East Boston Savings Bank v. Ogan
, 428 Mass. 327, 701 N.E.2d 331 (1998); 
Wolf v. Spariosu
, 706 So. 2d 881 (Fla. App. 1998); 
G.E. Capital Mortgage Services, Inc. v. Levenson
, 338 Md. 227, 657 A.2d 1170 (1995); 
Rock River Lumber Corp. v. Universal Mortgage Corp.
, 82 Wis. 2d 235, 262 N.W.2d 114 (1978); 
cf.
 
First Federal Savings Bank v. United States
, 118 F.3d 532 (7th
 Cir. 1997) (refusing to apply subrogation under Indiana law where subrogation would benefit a negligent title insurer that had not discovered a federal tax lien on behalf of the insured, which was a sophisticated mortgage lender)).

We hold that a refinancing mortgagee that records its mortgage lien is entitled to be subrogated to the original lien, and its corresponding priority position, established by the original mortgagee, under the doctrine of conventional subrogation, up to the amount that the original mortgage secured at the time of its perfection.  The doctrine of conventional subrogation will apply if the original mortgage lien is in full force and effect at the time that the refinancing mortgage lien is recorded.  However, nothing in our holding modifies in any way the ability to extinguish the original mortgage lien. If the original mortgagee files a release of lien prior to the recordation of the refinancing mortgagee's lien and if a third party records its lien after the release is recorded but before the refinancing lien is recorded, then conventional subrogation will not apply.  We also note that, under conventional subrogation, a refinancing mortgagee may not pick and choose which liens it will pay off.  The refinancing mortgagee will only be subrogated to the liens it pays off which predate the intervening third-party lien.  Nothing in our holding, however, limits the court from considering whether the doctrine of equitable subrogation may apply.

Having determined that conventional subrogation applies to move Aames into the priority positions established by Suburban and by Standard, we must remand this case to determine the extent to which Aames is subrogated.  Under our holding, Aames is only entitled to be subrogated up to the amount that the original mortgages secured at the time of perfection.  We have searched the record for evidence of the value secured by the Standard and Suburban mortgages, but we have been unable to locate the necessary information.  Although Aames has entered into the record evidence of the amounts it paid to Standard and Suburban, these amounts are irrelevant.  What is relevant is the value of the prior liens as determined by the mortgage documents.  That is to say, a finding that Aames has paid a certain sum to the prior mortgage holders does not necessarily translate into a finding that whatever sum was paid was indeed owed under the mortgages of record.  Therefore, on remand, the trial court should determine the amount to which Aames is subrogated.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

INGLIS and GALASSO, JJ., concur.