2024 IL App (1st) 231095-U

No. 1-23-1095

Order filed August 19, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| U.S. BANK, N.A., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| SHANNON M. FASSETT and BRIAN A. FASSETT, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (JPMorgan Chase Bank, N.A., | ) | |
| | ) | |
| Intervenor-Appellee). | ) | |
| | ) | Nos. 11 CH 3638 & |
| JPMORGAN CHASE BANK, N.A., | ) | 19 CH 12687 (Cons.) |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. BANK, N.A., | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | The Honorable Daniel |
| SHANNON M. FASSETT and BRIAN A. FASSETT, | ) | Patrick Brennan and Marian |
| | ) | Emily Perkins, |
| Defendants. | ) | Judges Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court erroneously determined that Chase Bank, N.A.'s lien had priority over the lien of U.S. Bank, N.A., where the latter bank's mortgage lien was recorded first, before Chase acquired an interest in the property. Equitable estoppel did not prevent U.S. Bank, N.A., from asserting the priority of its lien either.

¶ 2    U.S. Bank, N.A., (U.S. Bank) and Chase Bank, N.A., (Chase) filed competing claims arising from their respective mortgage liens on the residential property located at 2951 West Jarlath Street (the property). They subsequently filed cross-motions for partial summary judgment, each claiming that its lien had priority over the other. Ultimately, the circuit court ruled that Chase's lien was superior. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                I. Background

¶ 4    The record suggests that Shannon and Brian Fassett mortgaged their property 21 times over a period of 14 years. When they fell behind on mortgage payments, four entities claimed to have a priority lien on the property. Only U.S. Bank and Chase remain at issue.

¶ 5    In July 2005, Shannon began the application process for a mortgage loan with Fassett and Finucone Mortgage Services, Inc. (FFMS). Shannon happened to be FFMS's president and its sole shareholder. She then applied for a loan with Chase on August 4, 2005. On August 17th, however, the Fassetts entered into a mortgage agreement with FFMS and received approximately $360,000. FFMS assigned the mortgage to U.S. Bank on August 22, 2005. Both the mortgage and the assignment (collectively, the U.S. Bank mortgage) were recorded on August 26, 2005.

¶ 6    Meanwhile, Chase had approved the Fassetts for a mortgage loan of about $343,000 on August 25, 2005, the day before the U.S. Mortgage was recorded. Three days after the U.S.

mortgage was recorded, on August 29, 2005, the Chase mortgage loan closed. The record does not specifically disclose whether Chase's title company had informed Chase of U.S. Bank's previously recorded mortgage, but Chase claims it was unaware of that mortgage when the Chase mortgage was funded. Chase maintains that the precise time that it learned of U.S. Bank's lien is otherwise irrelevant. The Chase mortgage was recorded on September 16, 2005.

¶ 7   In January 2011, U.S. Bank filed a complaint to foreclose its lien. (No. 11 CH 3638). At that time, the balance due was approximately $350,000. In April 2014, U.S. Bank filed a motion for judgment of foreclosure and sale. Five months later, Chase intervened, asserting that it possessed a valid lien in the property.[1] U.S. Bank subsequently amended its complaint to assert that Chase's interest in the property was inferior to its own.

¶ 8   U.S. Bank and Chase filed cross-motions for partial summary judgment, each seeking a determination that its lien had priority over the other. U.S. Bank maintained that its lien was the first to be recorded and, consequently, was superior to Chase's lien.

¶ 9   According to Chase, however, U.S. Bank was equitably estopped from asserting the priority of its lien. When Shannon originally applied for the Chase loan, she falsely represented that Chase would receive a priority lien in the property. Before Shannon had mortgaged the property in favor of FFMS, she "requested that Chase fund the Chase Loan and agreed to provide Chase with a first mortgage lien interest in the Subject Property in return." Because Shannon was FFMS's president and registered agent, her conduct was required to be imputed to FFMS. Furthermore, U.S. Bank, as FFMS's assignee, was subject to all defenses that existed at the time of the assignment. Thus, U.S. Bank was equitably estopped from asserting the priority of its lien,

---

[1] Dubious release and satisfaction documents were recorded with respect to both the U.S. Bank mortgage and the Chase mortgage in 2007. In 2013, Chase recorded a notice reasserting its lien. At this juncture, there is no suggestion that either bank's debts were actually satisfied or released.

just as FFMS would have been. Conversely, "the uncontroverted facts in this matter demonstrate that Chase was unaware of the false nature of Shannon's representations when it agreed to fund the Chase Loan." Chase relied on several documents in support of its position, including an affidavit from Joseph G. Devine, Jr., an authorized signer for Chase, alleging that "[b]ut for the delivery of a complete and otherwise unencumbered first mortgage lien interest in the Premises, Chase would not have agreed to fund the Chase Loan."

¶ 10     On June 15, 2018, Judge Daniel Patrick Brennan resolved the motions for partial summary judgment in U.S. Bank's favor. The court found, in pertinent part, that the Chase mortgage was executed after the U.S. Bank mortgage. Consequently, "it would be a significant stretch to find U.S. Bank to be on inquiry notice of a loan that did not yet exist." U.S. Bank was not estopped from asserting the priority of its lien.

¶ 11     About six months later, Judge Brennan granted Chase's motion for reconsideration. The court found that Shannon's conduct was imputed to FFMS. U.S. Bank, as its assignee, was also subject to all existing defects in the lien. Contrary to its earlier determination, the court found FFMS and U.S. Bank were deemed to have had actual notice of the Chase loan because Shannon applied for that loan first. The court subsequently denied U.S. Bank's motion for a finding that there was no just reason for delaying either enforcement or appeal or both (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)).

¶ 12     In October 2019, Chase filed a separate foreclosure action (2019 CH 12687). U.S. Bank continued to deny that Chase's lien was superior to its own. As an affirmative defense, U.S. Bank asserted that its mortgage had priority because it was recorded first. 765 ILCS 5/30 (West 2004).

¶ 13     Meanwhile, in U.S. Bank's own foreclosure action (11 CH 03638), it filed a motion for judgment of foreclosure and sale, notwithstanding the prior determination that it was estopped

from asserting the priority of its lien. In support thereof, U.S. Bank submitted an affidavit of indebtedness. U.S. Bank also filed a motion for entry of a default judgment against the Fassetts and a motion to appoint a selling officer.

¶ 14    The two actions (Nos. 11 CH 03638 & 2019 CH 12687) were consolidated in February 2020. In August 2021, Judge Marian Emily Perkins granted Chase's motion to strike U.S. Bank's affirmative defense with prejudice, finding that U.S. Bank was seeking reconsideration of Judge Brennan's order and that his order was correct. Judge Perkins denied U.S. Bank's motion for reconsideration and held that Chase's mortgage "shall continue to be deemed senior."

¶ 15    In October 2022, Chase filed a motion for judgment of foreclosure and sale, claiming that $621,130 was due on the mortgage. Chase also moved for summary judgment, essentially arguing that there were no genuine issues of material fact due to the court's determination that U.S. Bank's lien was subordinate to Chase's lien. U.S. Bank opposed the motion.

¶ 16    In January 2023, Judge Perkins entered summary judgment against the Fassetts and U.S. Bank as well as a judgment of foreclosure and sale. In May, the property was sold for $433,116, leaving a deficiency of $249,016.63. The circuit court denied U.S. Bank's motion to partially stay the judgment by having the proceeds of the sale held pending the resolution of U.S. Bank's appeal.

¶ 17                                II. Analysis

¶ 18                                A. Justiciability

¶ 19    As a threshold matter, Chase asserts that this appeal is moot. A case becomes moot when events subsequent to the filing of an appeal render it impossible for the reviewing court to grant effectual relief to the appellant. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 28.

¶ 20    Chase contends that even if this court determines that U.S. Bank's lien was superior to Chase's lien, U.S. Bank failed to introduce evidence showing the outstanding sums, preventing

monetary recovery. Additionally, because U.S. Bank did not provide an appeal bond or obtain a stay of the order approving sale under Illinois Supreme Court Rule 305(k) (eff. July 1, 2017 ), U.S. Bank could not proceed to a judicial sale to obtain title to the property either.

¶ 21   U.S. Bank asserts, on the other hand, that Chase can still be ordered to turn over the proceeds of sale. Thus, the appeal is not moot.

¶ 22   We find Chase's argument based on Rule 305(k) to be a red herring. That rule generally provides that if an appellant fails to perfect a stay within the time for filing a notice of appeal, a reversal or modification of the judgment does not "affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to a sale based on the judgment and before the judgment is stayed." Ill. S. Ct. R. 305(k) (eff. July 1, 2017). Given that U.S. Bank is not seeking to recover title to the property from the purchasers, Rule 305(k) does not apply.

¶ 23   We also reject Chase's assertion that U.S. Bank failed to prove the amount outstanding on its loan at this juncture. Below, U.S. Bank repeatedly attempted to assert the priority of its lien. U.S. Bank also filed an affidavit of amounts due and owing. In addition, the property sold for less than the amount Chase claimed was due, leaving nothing for other lien holders. See 735 ILCS 5/15-1512(c) (West 2022) (stating that satisfaction of claims is in the order of priority). Furthermore, U.S. Bank unsuccessfully attempted to have the proceeds of the sale held pending the result of this appeal. Chase has cited no authority for the proposition that U.S. Bank, despite having unsuccessfully asserted the priority of its lien, was required to do more. See *JP Morgan Chase Bank, N.A., v. Talaganov*, 2018 IL App (1st) 180578, ¶ 30 (stating "[t]here is no requirement that the amount of the lien be proved up or adjudicated prior to distributing the proceeds"). Absent any properly developed argument to the contrary, we find that ordering Chase

to turn over funds to U.S. Bank remains an available form of relief. *Cf. JPMorgan Chase Bank, N.A., v. Bank of America, N.A.*, 2015 IL App (1st) 140428, ¶¶ 9, 45, 48 (finding the trial court did not abuse its discretion in denying the junior mortgagee surplus proceeds from the sale of the foreclosed property where that mortgagee lacked a valid lien due to the default judgment and judgment of foreclosure against it and had generally failed to act with any sense of urgency).

¶ 24                                                    B. Lien Priority

¶ 25      We now turn to U.S. Bank's assertion that the circuit court erroneously resolved the cross-motions for partial summary judgment in Chase's favor. Summary judgment is appropriate where the pleadings, affidavits and other matters on file demonstrate that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. The moving party must show that some element of the claim must be resolved in its favor or that insufficient evidence supports the nonmovant's claim. *Bahus v. Union Pacific Railroad Company*, 2019 IL App (1st) 180722, ¶ 27. In addition, we construe the record strictly against the movant and liberally in favor of the nonmovant. *Id*. When parties file cross-motions for summary judgment, they agree that only a question of law is involved. *Chicago Sun-Times v. Cook County Health & Hospitals System*, 2022 IL 127519, ¶ 24. We review the circuit court's ruling on a summary judgment motion *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

¶ 26      It is well settled that liens recorded first in time generally have priority over other claims. *AS 1, LLC, v. Celtic Home Solutions, LLC*, 2022 IL App (1st) 220485, ¶¶ 31-32; *Paliatka v. Bush*, 2018 IL App (1st) 172435, ¶ 16; *Federal National Mortgage Association v. Kuipers*, 314 Ill. App. 3d 631, 634 (2009). This is consistent with the Conveyances Act, which requires mortgages affecting title to real estate to be recorded. 765 ILCS 5/28 (West 2004). The purpose of this

statute is to permit third parties to ascertain the status of a property's title. *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 703 (2000). In addition, that act provides that mortgages "shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." 765 ILCS 5/30 (West 2004); see also 735 ILCS 5/15-1301 (West 2004). This provision is similarly intended to protect subsequent purchasers against unrecorded prior instruments. *Aames Capital Corp.*, 315 Ill. App. 3d at 704. Conversely, "where an instrument of conveyance or a mortgage is recorded in the appropriate public office, the public record provides constructive notice to the whole world." *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 27.

¶ 27    Here, U.S. Bank recorded its mortgage lien on August 26, 2005. At that time, U.S Bank lacked knowledge of Chase's lien. This is because Chase did not yet have one. At best, Shannon's application put U.S. Bank on notice that Shannon had, at least at one time, desired a mortgage loan from Chase and that she may or may not obtain one in the future. By suggesting that Shannon's application was a done deal, Chase counts its chickens before they have hatched. Shannon remained free to shop around for a better mortgage and Chase remained free to decline her application. Furthermore, other mortgage companies were entitled to compete for Shannon's business. To impose upon U.S. Bank a duty to inquire further based on such tenuous and uncertain information would be an undue burden. Moreover, Chase has cited no authority supporting the proposition that a mere mortgage application constitutes a cognizable interest. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Chase cannot demonstrate that it had a cognizable interest

in the property at the time U.S. Bank perfected its lien, let alone that U.S. Bank had actual or constructive inquiry notice of a cognizable interest.

¶ 28     Chase also maintains that U.S. Bank is equitably estopped from asserting the priority of its lien because Chase reasonably relied on Shannon's misrepresentations that she would provide it with a priority lien.

¶ 29    Under the doctrine of equitable estoppel, a person is barred from asserting rights that he may otherwise have possessed against another party, who in good faith, relied on the first person's conduct and changed his position for the worse. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). That being said, "[t]he party claiming the benefit of estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others." *Bank of New York v. Langman*, 2013 IL App (2d) 120609, ¶ 26. A party asserting equitable estoppel must show that (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time of the representations that they were untrue; (3) the party asserting estoppel did not know that the representations were false when made and acted upon; (4) the other party intended or reasonably expected the party asserting estoppel to act on the representations; (5) *the party asserting estoppel reasonably relied on the representations in good faith to its detriment*; and (6) the party asserting estoppel would be prejudiced by its reliance on the representation if the other party is permitted to deny the truth thereof. *Geddes*, 196 Ill. 2d at 313-14. Furthermore, the party asserting estoppel has the burden of proving that the defense applies by clear and unequivocal evidence. *In re Scarlett Z.D.*, 2015 IL 117904, ¶ 26. Considering all of the circumstances, the ultimate question is whether conscience and the duty of honest dealing should deny one party the right to repudiate the consequences of her representations. *Id*. ¶ 25.

¶ 30    For the purposes of our analysis, we will assume, without deciding, that (1) Shannon was acting as FMMS's agent when she submitted her application for a personal mortgage with Chase; (2) she unequivocally told Chase that she intended to provide a priority interest in the property; and (3) the foregoing information was imputed to FFMS and, in turn, U.S. Bank. *Allis-Chalmers Credit Corp. v. McCormick*,30 Ill. App. 3d 423, 424 (1975) (recognizing that "an assignee of a contract takes it subject to the defenses which existed against the assignor at the time of the assignment"); *Community Bank of Greater Peoria v. Carter*. 283 Ill. App. 3d 505, 508 (1996) (recognizing that an assignee stands in the shoes of the assignor). We nonetheless find that Chase has not met its burden of proving by clear and unequivocal evidence that equitable estoppel precludes U.S. Bank from asserting the priority of its lien. Chase did not reasonably rely on the representation of Shannon, as imputed to FFMS and U.S. Bank, that she was giving Chase a superior lien.

¶ 31    Chase's conduct in this case shows that it did not rely on Shannon's word. Instead, Chase sought the assistance of a title company, as any reputable mortgage company would do. In addition, the record does not conclusively show why Chase lacked actual knowledge of U.S. Bank's interest in the property. The title company may have completed its title search too early to see U.S. Bank's lien. In any event, Chase's act of hiring the title company shows that it was not relying on Shannon's word. Even if Chase had relied on Shannon's representations, that reliance would not have been reasonable. Mortgage applicants may engage in self-dealing, as this case suggests. Furthermore, the burden of performing an appropriate title search is minimal, notwithstanding that the search performed here was inadequate.

¶ 32   To apply equitable estoppel under these circumstances would nullify the doctrine that a lien recorded first in time is first in right. Even had Chase not attempted a title search, Chase

would be charged with constructive record notice of U.S. Bank's recorded lien. See *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 27 (stating that a purchaser of land had the duty to examine the record and is charged with notice of whatever the record shows, despite failing to investigate the public record); see *Aames Capital Corp.*, 315 Ill. App. 3d at 705 (stating that following the recording of the mortgage  liens, "third parties examining chain of title to the real estate were put on notice of the existence of the debts and of the liens on the real estate"); *U.S. Bank, N.A., v. Villasenor*, 2012 IL App (1st) 120061, ¶ 59 (recognizing that constructive notice, which includes record notice, is imputed by the law, whether or not a party had actual knowledge). We see no reason why the result should be different where Chase's title search was seemingly inadequate. By stating that "U.S. Bank failed to present any evidence to the trial court that Chase knew or should have known of the FFMS Loan," Chase disregards the very purpose of record notice.

¶ 33     Because Chase cannot satisfy its burden of demonstrating that equitable estoppel applies under these circumstances, U.S. Bank is entitled to assert the priority of its lien.

¶ 34                                      III. Conclusion

¶ 35     Here, the U.S. Bank mortgage lien was recorded without any knowledge of a cognizable interest belonging to Chase. Thus, U.S. Bank's lien had priority. Moreover, Chase cannot demonstrate by clear and unequivocal evidence that equitable estoppel applies.

¶ 36     For the foregoing reasons, we reverse the circuit court's orders granting summary judgment in favor of Chase and denying summary judgment to U.S. Bank. We remand for further proceedings consistent with this decision.

¶ 37     Reversed and remanded.