**In re Jeffrey M. KARP, Debtor.**

**Bankruptcy No. 05–30498.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 22, 2007.

David P. Leibowitz, Waukegan, IL, Trustee.

Chester H. Foster, Jr., Foster, Kallen & Smith, Homewood, IL, Counsel for Debtor.

Arnold G. Kaplan, Arnold Kaplan, Ltd., Chicago, IL, Counsel for Sherry Karp and Marlene Katz.

## *FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OBJECTIONS TO CLAIMS*

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding relates to the Chapter 7 bankruptcy case filed by Jeffrey M. Karp ("Debtor"). Chapter 7 Trustee David P. Leibowitz ("Trustee") filed an Objection to Claim No. 3 filed by Sherry Karp ("Sherry") and an Objection to Claim No. 4 filed by Marlene Katz ("Katz"). The basis for the claims filed by Sherry and Katz is the Debtor's asserted failure to pay family obligations due to third parties pursuant to a state court order dated October 23, 2003 ("Dissolution Court Order") entered in marriage dissolution proceedings between Sherry and Debtor ("Dissolution Proceedings").

For reasons set forth below, the Trustee's Objection to Claim No. 3 and Claim No. 4 is sustained and Claim Nos. 3 and 4 are by separate judgment order each disallowed in their entirety.

### *FINDINGS OF FACT*

Following trial, the Court now makes and causes to be entered the following Findings of Fact and Conclusions of Law:

1. Jeffrey Karp ("Debtor") filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 4, 2005 ("Petition Date").

2. David P. Leibowitz ("Trustee") was appointed as interim trustee and now serves as permanent Trustee.

3. After conducting the meeting of creditors, the Trustee filed an asset report on September 14, 2005. The bar date for claims was set at December 15, 2005.

4. Sherry Karp ("Sherry"), by and through her former counsel, Sorman & Frankel, timely filed a proof of claim for "family support" alleged in the amount of $19,235.00 as an asserted priority claim.

5. Sherry's mother Marlene Katz ("Katz"), timely filed her separate proof of claim for "financial support for debtor's family not supplied by debtor" in the amount of $47,105.58 as an asserted unsecured claim.

6. The basis for the claims filed by Sherry and Katz is the Debtor's failure to pay family obligations due to third parties pursuant to a court order dated October 23, 2003 ("Dissolution Court Order") entered in dissolution proceedings between Sherry and Debtor ("Dissolution Proceedings"). According to that Order, those obligations included:

a. Mortgage, which includes R.E. Taxes and insurance;

b. Car payment;

c. Multi Family Car Insurance Premiums

c. [sic] RACHEL's private school tuition, transportation and extra curricular activities now in place [sic];

d. Family COBRA insurance;

e. RACHEL'S therapy after insurance coverage;

f. Credit Cards in father's name ... the Electric bill payment now due and owing in the amount of $160.00, however the mother shall be responsible

for electric thereafter and all other utilities.

(Ex. A.)

7. According to Sherry's testimony, the Debtor did not pay all the expenses he was thereby required to pay pursuant to the Dissolution Court Order. (Trial Tr., Nov. 7, 2006, 30.) Sherry testified that as of the date of the filing of Debtor's bankruptcy petition, Debtor had failed to pay the following expenses required of him pursuant to the Dissolution Court Order: (1) three months worth of mortgage payments due at about $2,100.00 per month; (2) three months worth of car payments each at about $192.00 per month; (3) approximately $700.00 for car insurance covering a six-month period that began in April of 2005; (4) approximately $700.00 in electric company payments; (5) approximately $196.00 in gas company payments; and (6) approximately $131.00 in telephone payments.

8. Mrs. Katz was not a party in the Dissolution Proceedings.

9. In this bankruptcy case, the Chapter 7 Trustee listed for sale Debtor's real property located at 9029 Forestview, Evanston, IL (the "Property") pursuant to an order authorizing employment of a broker entered on September 15, 2005.

10. The Trustee filed an Adversary Proceeding against Sherry and Katz seeking approval to sell the Property owned by Debtor and Katz (since Katz was a non-debtor co-owner of the Property) pursuant to § 363(h) of the Bankruptcy Code. Attorney David Frankel represented both Sherry and Katz in the Adversary Proceeding which resulted in a Final Agreed Judgment Order entered on November 8, 2005. That order authorized the Trustee to sell the interests of the Debtor and Katz. The Final Agreed Judgment Order was signed by Counsel for the Trustee, by Counsel for Katz and Sherry, and by Katz and Sherry individually.

11. The Trustee, through his broker, obtained a contract for sale of the Property to a third party.

12. On November 22, 2005 the Trustee filed a Motion to Authorize the Sale of Property and for Approval of the Real Estate Contract. After notice and hearing and over objection of Katz, an order was entered on December 19, 2005 approving the Real Estate Contract and authorizing sale of the Property.

13. The Property was sold on January 19, 2006. The sale netted $40,022.61 for the Estate after Katz was paid for her half interest.

14. Prior to his bankruptcy filing, Debtor did not make mortgage payments on the Property for three (3) months. The total mortgage arrears on the Property as of the date of filing were $6,380.64. However, all mortgage debt on the Property was paid off when the sale closed.

15. All closing costs and fees incurred in the sale were approved by order herein.

16. Debtor scheduled the Property's value at $320,000; however, the Property was sold for a price of $388,000.

17. Any facts contained in the discussion below shall constitute additional Findings of Facts.

## JURISDICTION

This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334. It has been referred here by Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. § 1409(a).

## CONCLUSIONS OF LAW

A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10).

Under the Bankruptcy Code, "claim" is defined as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

11 U.S.C. § 101(5).

■ "Although the definition of claim is broad, the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment and, (2) whether that right arose before the filing of the petition." *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862, 866 (Bankr.S.D.N.Y. 1998).

■ A validly filed proof of claim constitutes prima facie evidence of the claim's validity. Fed. R. Bankr.P. 3001(f). A party objecting to the proof of claim, in this case the Trustee, has the initial burden to produce some evidence to overcome this rebuttable presumption. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3rd Cir. 1992); *In re Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987). The objector must produce some evidence to contradict the claim. *In re Grabill*, 121 B.R. 983, 992 (Bankr. N.D.Ill.1990). The burden then shifts back to the claimant to produce evidence meeting the objections and establishing the claim. *In re Chapman*, 132 B.R. 132, 143 (Bankr.N.D.Ill.1991). "However, the ultimate burden of persuasion always remains with the claimant to prove entitlement to the claim." *In re McCoy*, 355 B.R. 69, 72 (Bankr.N.D.Ill.2006).

### I. Claim No. 4 filed by Marlene Katz

On December 6, 2005 Katz filed an unsecured claim for "Financial support for debtor's family not supplied by debtor" in the amount of $47,105.58. Katz claims that she "provided the missing financial support, maintenance to her daughter thereby subrogating Marlene Katz to Sherry's claim rights against the debtor." (Answer ¶ 3.)

The pleadings do not detail the factual basis for this claim, but under federal notice pleading standards they need not do so. Fed.R.Civ.P. 8(a); *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir.1980). Based on the evidence presented by Katz at trial, her claim rests on the following:

1) "The following costs paid at closing diminished Katz's equity and caused her damage from a forced sale of the property: $7360.00 closing cost credit ... costs advanced to David Weinger totaling $1176.00 ... attorney [sic] fees of $1000.00 ... Broker fee of $7000.00 ... appraisal fee $300.00 ... titled [sic] fees of $390.00 ... survey fees of $425.00 ... moving costs ... furnace repair." (Proposed Findings of Fact and Conclusions of Law, ¶¶ 10–11.)

2) As a result of Debtor's vehicle being repossessed for failure to make the payments, Katz purchased a replacement automobile for Sherry costing $8,900.00. *Id.* at ¶¶ 14–15.

3) As a result of the sale of the Property, Sherry was rendered homeless

and Katz provided housing to Sherry and her granddaughter. *Id.* at ¶ 16.

Katz argued that the sale of the Property caused her significant damages. Katz, however, failed to establish by evidence that she incurred any actual damages in the sale of the Property. While Debtor did not make mortgage payments for three months on the Property, all secured debt was fully paid off at time of sale. Expenses involved in the sale of the Property were not damages incurred by Katz; rather they were standard expenses incurred in closing the sale of Property.

The debts owed by Karp to Sherry were not his obligations to his mother-in-law. If, however, she had paid those obligations, she might have had some argument that she was subrogated to her daughter's claim for such debts under authority cited below. But she did not make such payments.

Based on Katz's testimony, she did purchase a car for Sherry to replace Debtor's vehicle that was repossessed. (Trial Tr., 9–10, Nov. 13, 2006.) On or around November 4, 2005 Katz purchased a Mercury Sable for her daughter and granddaughter for $8,000.00. (Trial Tr., 30, Nov. 13, 2006; Ex. F.) The Mercury Sable was clearly purchased after Karp filed his bankruptcy case, as the Debtor filed for relief under Chapter 7 of the Bankruptcy Code on August 4, 2005. Claims of creditors that arise after the date of filing are not claims as defined in the Bankruptcy Code. *See* 11 U.S.C. § 101(5) and (10). Therefore, Debtor's estate is not liable for this expense as it clearly occurred post-petition.

In addition to the Mercury Sable, Katz purchased a condominium townhouse for her daughter and granddaughter as they were displaced when the Property was sold. (Trial Tr., Nov. 13, 2006, 70.)

The condominium townhouse was purchased on January 19, 2006. *Id.* at 69. In connection with the purchase of the condominium townhouse, Katz testified that she paid moving costs, appraisal fees, and lawyer fees. *Id.* at 67–76. But again, all such expenses incurred in the purchase of the condominium townhouse and related expenses were incurred post-petition. Therefore, Debtor's estate is not liable for any of those expenses.

As earlier noted, under the Dissolution Court Order, Debtor was obligated to pay the following:

a. Mortgage, which includes R.E. Taxes and insurance;

b. Car payment;

c. Multi Family Car Insurance Premiums

c. [sic] RACHEL's private school tuition, transportation and extra curricular activities now in place [sic];

d. Family COBRA insurance;

e. RACHEL'S therapy after insurance coverage;

f. Credit Cards in father's name … the Electric bill payment now due and owing in the amount of $160.00, however the mother shall be responsible for electric thereafter and all other utilities.

(Ex. A.)

Katz testified that she did not make payments to Sherry on account of Debtor's nonpayment of any of those expenses he was obligated to pay pursuant to the state court order. She also testified that she did not make mortgage payments prior to the Petition Date, did not make car payments for the Debtor prior to the Petition Date, did not make any payments for the family's car insurance prior to the Petition Date, did not make any payments on account of Rachel's private school tuition, transportation, or extracurricular activities

prior to the Petition Date, and did not make any payments on account of Rachel's therapy prior to the Petition Date. (Trial Tr., 96–99, Nov. 13, 2006.)

Katz testified that she *tried* to make car payments to DaimlerChrysler Credit. (Trial Tr., 13–14, Nov. 13, 2006.) However, according to her testimony, she did not make payments because a lawyer for DaimlerChrysler strongly advised against her doing so. *Id.* This conclusory and hearsay testimony was not corroborated. No evidence was offered to show when she attempted to make payments, how frequently she tried to make payments, the names of the representatives she allegedly talked to, and whether she sent DaimlerChrysler any payments that were not honored. Katz did not demonstrate refusal of DaimlerChrysler any other creditor to accept payment.

For the foregoing several reasons, Katz does not have a claim against Debtor's estate based on Debtor's nonpayment of his obligations under the Dissolution Court Order.

## II. *Claim No. 3 filed by Sherry Karp*

■ On November 8, 2005 Sherry filed an unsecured priority claim for "Financial Support" in the amount of $19,235.00 for debt incurred June 1, 2005 to present. Sherry testified at the trial as to the alleged basis for her claim.

As alleged, the Debtor did not pay certain expenses he was required to pay pursuant to the Dissolution Decree. (Trial Tr., Nov. 7, 2006, 30.) Sherry testified that as of the date of the filing of Debtor's bankruptcy petition, Debtor failed to pay the following expenses pursuant to the Dissolution Court Decree: (1) three months worth of mortgage payments, approximately $2,100.00 each per month; (2) three months worth of car payments at approximately $192.00 each per month; (3)

approximately $700.00 for car insurance for a six-month period that begun in April of 2005; (3) approximately $700.00 in electric company payments; (5) approximately $196.00 in gas company payments; and (6) approximately $131.00 in telephone payments. *Id.* at 30–31. No evidence contradicted that testimony (though it should be noted that Debtor was not individually a part of this proceeding and did not appear or testify).

While according to the evidence here, Debtor did not pay expenses that he was obligated to pay under the Dissolution Court Order, Sherry offered no evidence that she paid any of those expenses.

If Sherry had paid the expenses specified in the Dissolution Court Order because the Debtor failed to pay as ordered, she might have had a claim here for subrogation.

■ Based on the doctrine of subrogation, a person who, pursuant to a legal liability, is compelled to pay an obligation of another is allowed to obtain reimbursement from the party who is primarily liable. *In re Marriage of Milliken*, 199 Ill. App.3d 813, 819, 145 Ill.Dec. 821, 557 N.E.2d 591, 595 (Ill.App.1990). Therefore, "as a general rule, when one not acting as a mere volunteer or intruder pays a debt for another who is primarily liable, the doctrine of subrogation applies." *Id.* "The voluntary assumption of the payment of a debt, irrespective of the motives of the payor, does not confer upon the payor the status of subrogee." *Id.*

■ Under Illinois case law, there are two types of subrogation: conventional subrogation, which is based upon an express or implied agreement, and legal subrogation which arises by operation of law. *In re Pearce*, 236 B.R. 261, 264–65 (Bankr. S.D.Ill.1999). To assert a right of subrogation, a potential subrogee is required to

satisfy the following requirements: (1) the debt or claim must have been paid in full; (2) the subrogee must have paid a debt for which a third party and not the subrogee is primarily liable; (3) the subrogor must possess a right which he could enforce against a third party; and (4) the subrogee must not have acted as a mere volunteer in paying the debt or claim. *Id.* (citing *American Nat'l Bank v. Weyerhaeuser,* 692 F.2d 455, 460 (7th Cir.1982)). "Conventional subrogation differs from legal subrogation in that the parties' agreement takes away the character of a mere 'volunteer,' fulfilling that requirement for subrogation." *Id.* (citations omitted).

However, because there is no evidence that Sherry paid any of the expenses that Debtor was obligated to pay her claim of subrogation must fail.

■ Sherry also testified that she sustained damages as a result of Debtor's failure to pay the mortgage on the Property for three months. (Trial Tr., 46, Nov. 7, 2006.) Sherry also testified that she suffered damages as a result of the attorney's fees and lost interest in the Property as a result of the sale of the Property. *Id.* at 47. However, the evidence did not support these alleged damages. Sherry did not suffer damages based on the sale of the Property. Sherry did not even own the Property. The Property was jointly owned by Debtor and Katz. Therefore, Sherry had no standing to complain about the Property sale, and her claim for damages based on the sale of the Property must fail.

### III. *Priority Status*

Counsel for Katz and Sherry argues that both claimants possess a priority claim pursuant to § 507 of the Bankruptcy Code. The Reply to Trustee's Proposed Findings of Facts and Conclusions of Law filed by counsel for Katz and Sherry argued in pertinent part:

> Marlene Katz helped the Trustee generate money for this estate. As a result of the forced sale due to the debtor filing of chapter 7, Katz and Sherry were prevented from realizing the appreciation on their Evanston property located on the North Shore. Katz and Sherry were forced to pay closing costs and significant other expenses caused by the debtor resulting in realizing less net proceeds from the sale of the property. The losses on the value of the house and the other home related losses and failure to pay family obligations under the divorce decree is an administrative claim and expense entitled to be paid in full under Section 503(b)(1A).

(Reply to Trustee's Proposed Findings of Facts and Conclusions of Law 7.)

The evidence did not establish that because of the sale Katz and Sherry were prevented from realizing appreciation on the Property. Indeed, the Property was valued by Debtor at $320,000 but sold for $388,000. Moreover, Sherry was not an owner of the Property, and there is no basis for Katz's claim that she was entitled to any appreciation based on sale of the Property.

### *CONCLUSION*

Katz and Sherry failed to establish that they incurred damages based on Debtor's failure to pay his obligations under the Court Dissolution Order. Neither Katz nor Sherry paid any of Debtor's obligations under the Court Dissolution Order and neither demonstrated damages based on Debtor's failure to comply with the Court Dissolution Order. Because Katz and Sherry failed to demonstrate any valid claims at all against the estate, they have no administrative claims entitled to be paid

in full under Section 503(b)(1A) as they argued.

For the above reasons stated, this Court will by separate order sustain the Trustee's Objection to Claim Nos. 3 and 4 and disallow both claims in their entirety.

It should be noted that this proceeding in no way deals with or adjudicates any possible issue of nondischargeability of the claim by Sherry against her former spouse under 11 U.S.C. § 523(a)(5) or (a)(15).